IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN M. MONACELLI, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-2649-L |
| | § | |
| CITY OF DALLAS, and OFFICERS JOHN DOE 1-4. Individually and in his official capacity as a Dallas Police Department Police Officer, | § § § § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANT CITY OF DALLAS'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

The Defendant City of Dallas (the "City") files its Reply Brief in Support of its Motion to Dismiss Plaintiff's First Amended Complaint ("Complaint").

## I. SUMMARY OF REPLY

Plaintiff claims City employees violated his First, Fourth, and Fourteenth Amendment rights when they (1) restrained him from covering the George Floyd protests, and (2) unlawfully struck him with a Kinetic Impact Projectile ("KIP") on June 1, 2020. Plaintiff's Complaint and Response to the City's Motion to Dismiss (the "Response") (ECF No. 12) are bereft of factual allegations to state a plausible claim to relief, or enough facts to permit a reasonable inference that: (1) the City had an unconstitutional custom or policy; (2) the City acted with deliberate indifference to Plaintiff's constitutional rights; or (3) the City's alleged unconstitutional policy or custom was the "moving force" behind the alleged deprivation of Plaintiff's First, Fourth, and/or

Fourteenth Amendment rights.[1] As such, Plaintiff has failed to state a claim against the City.

## II. ARGUMENTS AND AUTHORITIES IN REPLY

### A. Plaintiff's Complaint Fails to Show that the City Delegated Policymaking Authority to Former DPD Chief Reneé Hall.

Plaintiff does not allege any written municipal policy or widespread practice. Instead, his claim and argument centers on the alleged actions of former Chief Hall, who Plaintiff maintains the City "impliedly delegated . . . policymaking authority" in policing and implementing departmental policies concerning the deployment of KIPs and pepper balls at protesters. Resp. at 19-20. However, Plaintiff's Response points to no facts in the Complaint which establish or from which this Court can reasonably infer that the Dallas City Council delegated final policymaking authority for the Dallas police department to former Chief Hall.[2]

Although the Fifth Circuit has clarified that for purposes of a motion to dismiss, "the specific identify of the policymaker is a legal question that need not be pled," Plaintiff's Response focuses heavily on whether various law enforcement officials are policymakers. Resp. at 16-20. The City does not dispute that the cited opinions stand for the proposition that in some Texas cities and towns, law enforcement personnel *can* be policymakers. *See Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 168 (5th Cir. 2010) (finding the City of Wichita Falls impliedly delegated its policymaking authority to the chief of police); *Hobart v. Estrada*, 582 F. App'x 348, 356 (5th Cir. 2014) (finding it was "not disputed that the City [of Stafford, Texas] delegated policymaking authority for the police department to Chief Krahn."); *Robinson v. City of Garland, Tex.*, No. 3:10-CV-2496-M, 2016 WL 7396048, at *9 (N.D. Tex. Aug. 17, 2016)

[1] "A city does not automatically incur section 1983 liability for injuries caused solely by its employees, and it cannot be held liable under section 1983 on a respondeat superior theory." *Flanagan v. City of Dallas*, 48 F. Supp. 3d 941, 948 (N.D. Tex. 2014) (citation omitted).

[2] Plaintiff's Response's new factual allegations and arguments are not present in his Complaint's allegations, and should therefore be ignored.

(finding "a reasonable jury could find that the Garland City Council delegated its policymaking authority to Chief Bates.") Plaintiff also cites *Garza v. City of Donna*, 922 F.3d 626, 637 (5th Cir. 2019) for the proposition that "**Texas police chiefs are final policymakers for their municipalities**." Resp. at 18 (emphasis omitted.) Of course, the full quote from *Garza* shows that decision in no way held *all* Texas police chiefs are *de facto* policymakers as Plaintiff asserts:

> We have previously found that Texas police chiefs are final policymakers for their municipalities, and it has often not been a disputed issue in the cases. *See, e.g.*, *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 168 (5th Cir. 2010) (concluding, from promulgation of "General Orders" by police chief, that he was final policymaking authority for "internal police policy"); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847–48 (5th Cir. 2009) (not disputed); *Lewis v. Pugh*, 289 F. App'x 767, 776 (5th Cir. 2008) (not disputed).

*Garza*, 922 F.3d at 637. This issue, fortunately, is in not debate; the Fifth Circuit long ago recognized that the Dallas City Council as the City's policymaker. *Groden v. City of Dallas, Texas*, 826 F.3d 280, 284 (5th Cir. 2016) (citing *Bolton v. City of Dallas*, 541 F.3d 545, 550 (5t Cir. 2008). Plaintiff's Complaint does not sufficiently plead nonconclusory facts connecting the City's alleged unconstitutional policies to the City's actual policymaker, its City Council, nor plead facts sufficient to disturb well-settled Fifth Circuit case law.

Indeed, Plaintiff's Complaint alleges no facts from which this Court may infer the City Council expressly delegated DPD policymaking authority to Chief Hall. *See Zarnow*, 614 F.3d at 167 ("A city's governing body may delegate policymaking authority (1) by express statement or formal action or (2) 'it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role.'") (citation omitted.) Moreover, Plaintiff's Complaint alleges no facts or specific acts which show that the *City Council* engaged in any "conduct or practice, encourage[ment] or acknowledge[ment]" effectively making Chief Hall a City policymaker.

Furthermore, Plaintiff has failed to point to any facts which show that the City's actual

policymaker—the City Council—had actual or constructive knowledge of any patterns, customs, policies, or practices where (1) journalists were in any way prevented from exercising their First Amendment rights, or (2) a widespread practice of City employees misusing KIPs against protestors and/or journalists. Plaintiff has failed to point to any nonconclusory facts in the Complaint to show or facts from which this Court may infer the City policymakers were deliberately indifferent to any of the alleged unconstitutional policies alleged in Plaintiff's Complaint. Accordingly, Plaintiff's claims against the City must be dismissed.

**B. Plaintiff's Complaint moreover fails to allege facts which show that the alleged unconstitutional conduct was directly attributable to an unconstitutional policy or custom.**

Plaintiff claims the City maintained a policy of unconstitutionally restricting movement of journalists. Plaintiff's Complaint proclaims: "At all relevant times, DPD *had a policy* to 'not restrict movement of newspersons, unless their actions clearly and directly interfere with police operations or investigations.'" Compl. ⁋ 104. The Complaint further pleads that on the night in question, "[o]fficers . . . did let certain journalists from various other outlets continue to report on the events." *Id.* ⁋ 35. Plaintiff's pleadings, therefore, demonstrate that Plaintiff's grievance with the City only concerns the alleged unlawful detention *of him* and alleged deprivation of *his* First Amendment rights *in violation of official policy*. Plaintiff has failed to allege facts which show that the DPD's general orders and practice as to journalists, the alleged written policy and custom about which he complains, as written or applied in any way violated the First Amendment. Therefore, Plaintiff fails to state a plausible claim against the City based on any alleged unlawful policies or customs of restricting the movement of journalists.

**C. Plaintiff does not plead an official policy based on any widespread practice so common and well-settled as to constitute a custom that fairly represents municipal policy.**

Plaintiff's constitutional claims against the City based on its alleged deliberate indifference to unconstitutional unwritten policies and police training all share one failing: the total absence of a widespread practice or pattern of similar unconstitutional violations by City employees. As such, all of Plaintiff's municipal liability claims against the City fail.

Regarding Plaintiff's claims related to the City's alleged policies related to the restrictions of journalists and unlawful use of KIPs, the Fifth Circuit reiterated in *Piotrowski* that, while official policy "is ordinarily contained in duly promulgated policy statements, ordinances, or regulations," it may arise from a custom, previously defined by the Fifth Circuit in *Webster v. City of Houston* as

> [A] *persistent, widespread practice* of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is *so common and well-settled* as to constitute a custom that fairly represents municipal policy.

*Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (emphasis added); *see also* Resp. at p. 11 (noting general need for pattern to prove "custom or policy").

With respect to Plaintiff's failure to train claims regarding restrictions of journalists and unlawful use of KIPs, the Fifth Circuit explained recently in upholding a dismissal of a *Monell* claim on the pleadings:

> To establish a failure-to-train claim, a plaintiff must "prove that (1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Pena*, 879 F.3d at 623 (cleaned up). *To show deliberate indifference, a plaintiff normally must allege a "pattern of similar constitutional violations by untrained employees*." *Id.*

*Hutcheson v. Dallas County*, 994 F.3d 477, 482 (5th Cir. 2021) (citation omitted) (emphasis added.)

Plaintiff's efforts to conjure a pattern from the factual allegations in his Complaint fail, as do the supplemental arguments raised in his Response. The Response sums up Plaintiff's pattern allegations as follows: (1) a single incident in 2018 involving a police officer who deployed a PepperBall launcher during a Botham Jean protest, (2) a statement from former Chief Hall following that incident, and (3) "the DPD report" *after* the 2020 George Floyd-related protests. Resp. at 15. That's it. Plaintiff does not allege any facts showing a *widespread practice or pattern* of City employees deploying KIPs either during protests before 2018, or between 2018 and June 1, 2020.[3]

In its Motion, the City demonstrated the insufficiency of the 2018 single PepperBall incident to form a pattern. *See* Mot. to Dismiss at 10-11. Tellingly, Plaintiff cites no case law—and the undersigned is unaware of any—in which one prior incident is sufficient to establish an official policy or constitute a widespread practice or pattern necessary to establish a claim based on municipal liability. As to Chief Hall's prior statement that the single 2018 incident "was in line with DPD general orders," Resp. at p.12 (citing Compl. ¶¶ 49, 52), it is insufficient to connect the alleged unconstitutional policy to the City's actual policymaker, the City Council. Plaintiff argues that Chief Hall's statement demonstrated deliberate indifference and her "single decision to adopt an unconstitutional policy." Resp. at 12-13. However, as noted above, Plaintiff's Complaint failed to show that the City Council delegated its policymaking authority.

[3] Plaintiff also attempts to use allegedly similar constitutional violations that transpired in remarkably close temporal proximity to his injuries as part of a "pattern." Resp. at p. 23. When read closely, Plaintiff's Complaint and Response allege two photographers were injured the prior evening, and one *Dallas Morning News* staffer hit the same evening, as Plaintiff's alleged injuries. *Id.* (citing Compl. at ¶¶ 30, 59). Plaintiff cites no case law—and the undersigned in unaware of any—where a policymaker is on sufficient notice of a "pattern" of actions from two actions twenty-four hours prior, and that municipal liability can attach for alleged failure to rectify whatever problems existed by twenty-four hours later. Likewise, Plaintiff cites no case law—and the undersigned in unaware of any—where a policymaker is on sufficient notice of a "pattern" from any actions literally the day they occurred.

Thus, Plaintiff has failed to allege sufficient facts from which this Court could reasonably infer that she could bind the City to the alleged "policy." Regardless, Plaintiff's Complaint pleads facts which show that Chief Hall's statement did not authorize or condone any indiscriminate use of KIPs against protestors:

> The day after the incident, then-DPD Chief Renee Hall said in a video published online that she was "concerned to learn of reports that one of our officers deployed potentially several pepper balls during a demonstration last night . . . They are only to be utilized if instructed to do so by the on[-]scene commander or if there is an immediate threat to the public."

Compl. at ⁋ 49.[4]

In other words, Chief Hall's full 2018 statements indicated her "concern[]" about KIP deployment and her opinion that KIPs' utilization should be strictly limited. Even if Plaintiff's sufficiently pled facts to show that Chief Hall was the City's final policymaker, which it does not, this statement alone does not adequately allege that the City had a policy in 2020 authorizing law enforcement to indiscriminately deploy KIPs at journalists and protestors. Nor does the Complaint allege facts from which this Court can reasonably infer that Chief Hall's 2018 statement authorized law enforcement officers to indiscriminately deploy KIPs against journalists and protesters in 2020. Plaintiff's Response points to the following allegations in his Complaint to support a pattern and/or deliberate indifference:

> The DPD reviewed the [2018] incident and issued a preliminary report. In spite of the policy violations with regard to the officer's lapsed certification and his failure to inspect his weapon after it was issued to him for his shift, the Department deemed his actions 'consistent' with the department's general orders."

*Id.*at ⁋ 52.[5]

---

[4] Resp. at p. 12.

[5] *Id*. Notably, Plaintiff alleges 2018 incident involved essentially *administrative* failings on the officer's part in not being timely recertified for, or inspecting, his weapon. None of Plaintiff's allegations concern such non-violent paperwork failings.

According to Plaintiff, the police department's review of the 2018 incident and finding that the officer's actions were not inconsistent with General Orders demonstrates deliberate indifference and provides a sufficient basis to support the alleged deprivation of Plaintiff's constitutional rights two years later. Resp. at 12-13. Even assuming Chief Hall found that the officer's conduct in 2018 was consistent with the "department's general orders," Plaintiff has not alleged other sufficiently similar incidents where KIPs were used against protesters. To allege a pattern, "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the *specific violation* in question. That is, notice of a pattern of *similar violations* is required." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (footnotes omitted) (emphasis added.) Thus, even assuming that Chief Hall failed to reprimand the officer who deployed the KIP in 2018, Plaintiff does not allege any facts which show that the same officer was the one who deployed the KIP against Plaintiff, or similar incidents where KIPs were deployed against journalists or protesters.

Therefore, Plaintiff's policy and failure-to-train claims (which encompasses all Plaintiff's claims) must be dismissed for failure to allege facts from which this Court can infer a widespread custom or pattern of City employee unconstitutional acts.[6]

---

[6] Courts in the Fifth Circuit routinely dismiss section 1983 municipal lawsuits based on failure to identify a pattern of similar unconstitutional behavior *at the pleading stage*. *See, e.g.*, *Hutcheson v. Dallas County*, 994 F.3d 477, 482 (5th Cir. 2021); *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (upholding dismissal of pleadings where Plaintiff failed to identify pattern); *Self v. City of Mansfield*, 369 F. Supp. 3d 684, 702–03 (N.D. Tex. 2019) (dismissing Plaintiff's complaint after finding, *inter alia*, no alleged "pattern of repeated constitutional violations" or "evidence of persistent, repeated, and constant violations of constitutional rights by virtue of this alleged failure to train." ); *Harvey v. Montgomery County*, 881 F. Supp. 2d 785, 798 (S.D. Tex. 2012) (dismissing First Amendment claims for failure to allege a pattern of similar violations); *Pinedo v. City of Dallas*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) ("To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'") (quoting *Piotrowski*, 237 F.3d at 582.)

**D. Plaintiff does not plausibly plead "moving force" causation.**

Regardless, Plaintiff's Complaint does not allege, and Plaintiff's Response does not point to any, facts which *show* "moving force" causation to establish his § 1983 municipal liability claims. *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). To show "moving force causation," Plaintiff must demonstrate a "direct causal link" between the municipality's policy and the deprivation of Plaintiff's federal rights. *Id.* at 542, 546 (citation omitted). "[T]he connection must be more than a mere 'but for' coupling between cause and effect. The deficiency in training, hiring, or supervision must be the actual cause of the constitutional violation." *Id.* at 546. Plaintiff's Response addresses "moving force" causation in one paragraph, and there, only for the alleged KIP deployment. Resp. at 20-21.

Plaintiff makes classic "but for" causation arguments and summarizes them as follows: "Had DPD previously been enjoined from using KIPs in crowd-control situations, as it was shortly after the George Floyd protest, or had Chief Hall not been deliberately indifferent to the likelihood of constitutional violations, [Plaintiff] would not have suffered physical injury while attempting to gather the news." *Id*. at 21 (citing Compl. ⁋ 56). None of these allegations—a subsequent court order or words of a non-policymaker—sufficiently show the City's alleged policy *caused* the alleged denial of Plaintiff's First Amendment right to freedom of the press or Fourth Amendment right to be free from unreasonable search and seizure.

Further, Plaintiff's very Complaint undermines his First Amendment claims. Although Plaintiff alleges the City's policy of restricting journalists was the moving force behind his First Amendment claims, Plaintiff pleads that: (1) the City had a written policy of *permitting* journalists access to events where possible, and (2) other journalists *were allowed access* to the protests on the evening in question. Critically, Plaintiff has plead no pattern of City employees denying journalists access to cover protests or facts from which the Court can reasonably infer

that City otherwise had any policy of denying journalists access to protest-related events. Thus, Plaintiff allegations that law enforcement officials denied his First Amendment right to access the protests as a journalist fail to allege facts which show that the alleged deprivation(s) were pursuant to an official governmental policy.

Plaintiff also has failed to point to facts showing that an official City policy was the moving force behind his Fourth Amendment unreasonable seizure claims. As previously stated, neither Plaintiff's allegations concerning the single 2018 KIP incident, discussed above, nor the events that occurred temporally at/near/after the events giving rise to his alleged injuries sufficiently establish a pattern of widespread unconstitutional violations. To the extent Plaintiff relies on Chief Hall's subsequent updates to the police department's KIP policy to show moving force causation, those efforts likewise fail. *Id*. at 21. First, Plaintiff has failed to allege facts which show that Chief Hall was delegated policymaking authority. Second, Plaintiff fails to identify the specific "updates" and, thus, he has failed to show how the absence of the alleged new policies were the "moving force" for his injury. Without express direction or deliberate indifference by a subordinate official with policymaking authority or a widespread practice or pattern of prior sufficiently similar alleged constitutional violations by City employees, Plaintiff has failed to show that the City caused a deprivation of Fourth Amendment rights.

Therefore, Plaintiff has not sufficiently alleged "moving force" causation against the City and his claims must be dismissed.

## III. CONCLUSION

Plaintiff's Complaint fails to allege sufficient facts to nudge his claims across the line from conceivable to plausible. For these reasons, Plaintiff's claims and this lawsuit against the City must be dismissed with prejudice.

Respectfully submitted,

CITY ATTORNEY OF THE CITY OF DALLAS

Christopher J. Caso
City Attorney

/s/ *J. Cheves Ligon* .
J. Cheves Ligon
Senior Assistant City Attorney
Texas State Bar No. 24070147
john.ligon@dallascityhall.com

Lindsay Wilson Gowin
Senior Assistant City Attorney
Texas State Bar No. 241114001
lindsay.gowin@dallascityhall.com

Devin Q. Alexander
Assistant City Attorney
Texas State Bar No. 24104554
devin.alexander@dallascityhall.com

7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone: 214-670-3519
Facsimile: 214-670-0622
*Attorneys for Defendant City of Dallas*

**CERTIFICATE OF SERVICE**

I certify that on January 10, 2022, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the CM/ECF electronic case filing system of the court. The electronic case filing system will send a "Notice of Electronic Filing" notification to all case participants registered for electronic notice, including all *pro se* parties and/or attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

s/ *J. Cheves Ligon*
Senior Assistant City Attorney