IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **STEVEN M. MONACELLI,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:21-CV-2649-L** |
| | § | |
| **CITY OF DALLAS and OFFICERS** | § | |
| **JOHN DOE 1-4, individually and in their** | § | |
| **official capacities as Dallas Police** | § | |
| **Department Officers,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Defendant City of Dallas's (the "City") Motion to Dismiss Plaintiff's

First Amended Complaint and Brief in Support ("Motion to Dismiss") (Doc. 8), filed November

19, 2021. After careful consideration of the motion, response, reply, pleadings, record, and

applicable law, the court **grants** the City's Motion to Dismiss and allows Plaintiff leave to amend,

except as to his claims against Officers John Doe 1-4 (collectively, the "John Doe Defendants"),

as sued in their individual capacities, as they not been identified or served with process.[1]

---

[1] Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978). Plaintiff's official-capacity suit against the John Doe Defendants "is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official[s] personally, for the real party in interest is the entity." *Goodman v. Harris Cnty.*, 571 F.3d 388, 394-95 (5th Cir. 2009) (internal quotation marks omitted) (citations omitted). Because Plaintiff's claims against the John Doe Defendants in their official capacity "are really suits against the governmental entity," *Goodman*, 571 F.3d at 396, the court's analysis of Plaintiff's claims against the John Doe Defendants in their official capacity is identical to and subsumed by its analysis of his claims against the City. **Further, the court directs the clerk of court to amend the caption of this action as herein shown to correctly reflect the parties being sued.**

I.      **Factual Background and Procedural History**

According to the Amended Complaint,[2] on June 1, 2020, Plaintiff Steven M. Monacelli ("Plaintiff" of "Mr. Monacelli"), a freelance journalist, was on assignment for The Dallas Voice covering one of several days of protests that occurred in Dallas, Texas, following the death of George Floyd. Am. Compl. ¶ 18. That night, hundreds of demonstrators marched onto the Margaret Hunt Hill Bridge. *Id.* ¶¶ 20-21. Plaintiff moved along with the demonstrators and filmed the protest on his phone. *Id.* ¶¶ 20, 22. Before arriving at the protest, Plaintiff wrote "PRESS" in large black lettering on his shirt, backpack, and white helmet to make clear he was attending in his capacity as a journalist. *Id.* ¶¶ 32, 36. He also had e-mails on his cellular telephone from his editor, along with her contact information, ready to show that he attended the protest on assignment as a journalist. *Id.* ¶ 32.

Once on the Margaret Hunt Hill Bridge, protesters, other journalists, and a city council member were quickly penned in by a line of Dallas Police Department ("DPD") officers who blocked their path in the front while another group of officers in armored vehicles blocked them from behind. *Id.* ¶ 22. Mr. Monacelli stayed toward the front of the crowd, keeping to the shoulder. *Id.* ¶¶ 20-21. Officers in the line deployed chemical irritants and kinetic impact projectiles ("KIPs") at the crowd. *Id.* ¶¶ 23-25. After recovering from his exposure to the chemicals, Plaintiff filmed protesters moving away from police. *Id.* ¶ 26. When he turned his back to the police line to film the protestors in retreat, John Doe Police Officer 1 fired a KIP at the back of his leg, leaving a large, discolored bruise that caused him to limp for several days. *Id.* ¶¶ 27-28. Seconds later, John

---

[2] As set forth in Section II, *infra*, in deciding the City's Rule 12(b)(6) motion, the court construes the Amended Complaint in the light most favorable to Plaintiff, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in his favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

Doe Police Officer 2 shot him in the back with a green paintball. *Id.* ¶ 29. Plaintiff was not the only person hit with a projectile that night. A Dallas Morning News staff photographer was hit in the upper thigh and buttocks with a projectile. *Id.* ¶ 30.

Rather than verify his credentials, DPD officers arrested him and hundreds of other people. *Id.* ¶ 31. As DPD officers began zip-tying the hands of people sitting on the Margaret Hunt Hill Bridge, Plaintiff asked if he could resume his work. *Id.* ¶ 39. Plaintiff repeatedly told any DPD officer in earshot that he was a member of the press and offered to show proof of his assignment. *Id.* ¶¶ 34, 36, 39. When he again sought an explanation for his arrest, John Doe Police Officer 3 told Plaintiff that he specifically needed a "Press ID," despite DPD's written policies, which do not require reporters to carry badges or laminated identification on their persons to access police-controlled scenes and areas. *Id.* ¶ 37. DPD officers refused to look at Plaintiff's e-mails or call his editor. *Id.* ¶ 38.

Mr. Monacelli told John Doe Police Officer 4 that "he was a member of the press and asked why he was being zip tied. John Doe Police Officer 4 would not respond except to say, 'You're under arrest.'" *Id.* ¶ 40. At approximately 10:45 p.m., John Doe Police Officer 4 zip tied Plaintiff's hands behind his back, and he was held in this manner until approximately 11:56 p.m.  *Id.* ¶¶ 41, 42.  During the course of the arrest, Plaintiff was unable to continue his work as a reporter and was hindered in his pursuit of several stories related to the protests. *Id.* ¶¶ 31, 61. In addition to the injury to his leg, Plaintiff began experiencing stress and anxiety attacks in the days following the shooting and arrest. *Id.* ¶ 60.

Plaintiff filed this civil rights action on October 16, 2021, against the City and the John Doe Defendants. On November 1, 2021, he filed an Amended Complaint (Doc. 4), the live pleading. He seeks monetary and injunctive relief stemming from injuries he alleges he suffered

on June 1, 2020, while covering the protests.  Specifically, Plaintiff asserts claims against the City and the John Doe Defendants pursuant to 42 U.S.C. § 1983, alleging the City and the John Doe Defendants violated his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution when the John Doe Defendants (1) shot him with KIPs; and (2) arrested and detained him, thereby preventing him from exercising his First Amendment rights as a member of the press to cover the protests. He contends his injuries are "the direct result of official policies of the City and failures by the City to implement and enforce policies and standards to ensure DPD officers know and are trained in the constitutional limits of force against civilians, particularly those exercising their First Amendment rights." Am. Compl. ¶ 6.

On November 19, 2021, the City has filed its Motion to Dismiss Plaintiff's claims of municipal liability under § 1983. *See* Mot. to Dismiss (Doc. 8). On December 27, 2021, Plaintiff filed his Response to the City of Dallas's Motion to Dismiss. *See* Pl.'s Resp. (Doc. 12). On January 10, 2022, the City filed its Reply Brief in Support of its Motion to Dismiss. *See* Reply (Doc. 13). After setting forth the applicable legal standard governing dismissal under Federal Rule of Civil Procedure 12(b)(6), the court will address the City's Motion to Dismiss.

## II.     Applicable Legal Standard (**Rule 12(b)(6) - Failure to State a Claim**)

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more

than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In ruling on such a motion, the court cannot look beyond the pleadings. *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted). Further, it is well-established and "'clearly proper in deciding a 12(b)(6) motion

**Memorandum Opinion and Order – Page 5**

[that a court may] take judicial notice of matters of public record.'" *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). While well-pleaded facts of a complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679 (citation omitted). Further, a court is not to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions. *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). The court does not evaluate the plaintiff's likelihood of success; instead, it only determines whether the plaintiff has pleaded a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). Stated another way, when a court deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in the pleadings to determine whether they are adequate enough to state a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th Cir. 1997) (en banc). Accordingly, denial of a 12(b)(6) motion has no bearing on whether a plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6) challenge. *Adams*, 556 F.2d at 293.

III.    **The City's Motion to Dismiss**

A.    **Municipal Liability Under 42 U.S.C. § 1983**

A governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right. *Board of the Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A governmental entity *cannot* be liable for civil rights violations under a theory of respondeat superior or vicarious liability. *Id.*; *see also Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979). Official policy is defined as:

> 1.    A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [city] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2.    A persistent, widespread practice of [city] officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents [city] policy.  Actual or constructive knowledge of such custom must be attributable to the governing body of the [city] or to an official to whom that body had delegated policy-making authority.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*); *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (*en banc*). For purposes of a motion to dismiss under Rule 12(b)(6), a plaintiff must plead facts from which the court can reasonably infer that the "challenged policy was promulgated or ratified by the city's policymaker." *Groden v. City of Dallas, Texas*, 826 F.3d 280, 285 (5th Cir. 2016). "[C]ourts should not grant motions to dismiss for [the] fail[ure] to plead the specific identity of the policymaker." *Id.* (citing *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014)).

The ultimate question in deciding the sufficiency of a complaint is whether a person has alleged facts to show that a policymaker promulgated or ratified an unconstitutional policy that

resulted in injury to him or her. Although a plaintiff need not offer proof of his or her allegations at the pleading stage, a plaintiff "must plead facts that plausibly support each element of § 1983 municipal liability." *Peña v. City of Rio Grande, Tex.*, 879 F.3d 613, 621 (5th Cir. 2018) (citation omitted). In other words, a plaintiff must set forth facts, or those from which the court can reasonably infer, that: "(1) an official policy; (2) promulgated by the municipal policymaker; (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields v. Harris Cnty., Tex.*, 860 F.3d 803, 808 (5th Cir. 2017) (footnote and citations omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citations omitted).

To defeat "a motion to dismiss, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Balle v. Nueces Cnty., Tex.*, 690 F. App'x 847, 852 (5th Cir. 2017) (quoting *Spiller v. City of Tex. City Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). In other words, the pleadings are adequate with respect to a section 1983 claim against a city when they set forth "specific factual allegations that allow a court to reasonably infer that a policy or practice exists and that the alleged policy or practice was the moving force" for the constitutional violation asserted. *Id.* (citation omitted). Although *Spiller* is twenty-five years old, its holding that allegations of an allegedly unconstitutional policy or custom of a local government may not be stated conclusorily but must set forth specific facts is still solid law, and it was recently cited with approval by the Fifth Circuit in *Peña*, 879 F.3d at 622. If a complaint does not meet the standard set forth in *Spiller*, an action cannot "proceed beyond the pleading stage." *Peña*, 879 F.3d at 622.

B.       **Analysis**

Plaintiff alleges four causes of action, all of which name the City as a defendant. The court notes, however, that only Counts I and IV contain allegations against the City. His claims against the City arise from two separate events: (1) the injuries he suffered from the alleged KIP attack; and (2) his detention, which he alleges prevented him from covering the protests.

From what the court can glean from the First Amended Complaint, Plaintiff points to one alleged policy or custom of the City that he contends caused the violations of his constitutional rights and that he alleges forms the basis of the City's liability under § 1983. Specifically, in Count I, Plaintiff alleges the City is liable for John Doe Officer 1's and John Doe Officer 2's violations of his right to be free from excessive force, because the City and DPD "instituted a policy and practice of using excessive force against non-threatening, peaceful protestors and journalists covering protests as a means of intimidation and control." Am. Compl. ¶ 71.

In Count IV, Plaintiff seeks to establish municipal liability under a failure-to-train theory. With respect to the alleged excessive force used by John Doe Officers 1 and 2, he alleges that the City is responsible "for training on the use of firearms with regard to allegedly less lethal impact weapons and [KIPs]." *Id.* ¶ 96. He alleges the City knew the risks "but failed to institute any training with regard to the range and risks of significant injury from the projectile." *Id.* ¶ 97. With respect to the alleged violations of his First Amendment rights as a journalist, he alleges that the City and DPD have in place a policy to "not restrict movement of newspapers, unless their actions clearly and directly interfere with police operations or investigations." *Id.* ¶ 104. He contends that the City is liable for the John Doe Defendants' violation of his constitutional rights because the City "was deliberately indifferent in its failure to train or supervise [the John Doe Defendants] to follow this DPD policy, and this failure to train led to the deprivation of [his] constitutional

rights[.]" *Id.* Mr. Monacelli also contends that the City "failed to adequately train, supervise, or discipline its officers about the First Amendment right to photograph and video in public, including during public protests." *Id.* ¶ 106.[3]

In support of its Motion to Dismiss, the City contends that Plaintiff's pleadings are too conclusory and speculative to state a claim upon which relief can be granted. The essence of the City's contentions is that sufficient facts have not been pleaded in the Amended Complaint as required by Supreme Court and Fifth Circuit authority for this court to reasonably infer that (1) the City had an unconstitutional policy or custom; (2) that the City's final policymakers acted with deliberate indifference to Plaintiff's constitutional rights; or (3) the City's alleged policy or custom was the moving force behind any constitutional injury Plaintiff may have suffered. *See* Mot. to Dismiss (Doc. 8).

In response to the City's Motion to Dismiss, Plaintiff maintains:

> Monacelli has pled factual allegations of Defendant's liability under 42 U.S.C. § 1983 for violation of his First and Fourth Amendment rights. The Dallas Police Department (DPD) deprived freelance reporter Monacelli of his First and Fourth Amendment rights during a protest against the death of George Floyd by shooting him multiple times with Kinetic Impact Projectiles (KIP or KIPs) and then arresting him for two and a half hours. The arresting police officers ignored his repeated attempts to show proof that he is a journalist, thus blocking him from further filming the events. DPD's use of excessive force and arrest of Monacelli injured him and obstructed his ability to engage in classic First Amendment activity—including reporting on the use of excessive force by police.

Pl.'s Resp. 5 (Doc. 12).

---

[3] The court notes that Plaintiff's response brief (Doc. 12) contains new factual allegations that are not present in the Amended Complaint. Even if Plaintiff is attempting to assert additional factual allegations, a court "does not base its decision on allegations raised for the first time in the motion to dismiss or the plaintiff's response." *Hearn v. Deutsche Bank Nat. Tr. Co.*, No. 3:13-CV-2417-B, 2014 WL 4055473, at *4 (N.D. Tex. Aug. 15, 2014) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). The court, therefore, will not consider allegations raised for the first time in Plaintiff's response brief, but only those allegations contained in the Amended Complaint.

**Memorandum Opinion and Order – Page 10**

The court now addresses whether Plaintiff has adequately alleged facts to support the three elements required to state a claim for municipal liability under § 1983: that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Hicks-Fields*, 860 F.3d at 808 (citations omitted).

        **1.**      **Count I – Policy or Custom of Deploying KIPs on Protestors, Bystanders and Journalists Covering Protests**

              **a.  Official Policy or Custom**

As previously noted, in Count I, Plaintiff alleges the City is liable for John Doe Officer 1's and John Doe Officer 2's violations of his right to be free from excessive force, because the City and DPD "instituted a policy and practice of using excessive force against non-threatening, peaceful protestors and journalists covering protests as a means of intimidation and control." Am. Compl. ¶ 71. The City counters and argues that Plaintiff has failed to allege sufficient facts supporting the existence of an official policy or custom of using excessive force against non-threatening, peaceful protestors and journalists covering protests. For the reasons that follow, the court agrees.

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (in turn quoting *Webster*, 735 F.3d at 841).

In the Amended Complaint, Plaintiff alleges that "[t]he written and unwritten policies of the [City] . . . are the moving force" behind his injuries. Am. Compl. ¶ 79. Plaintiff, however, fails to make any allegations identifying a written policy he contends is unconstitutional. Accordingly, the City's liability under § 1983 can only arise from "'a persistent, widespread practice of City

**Memorandum Opinion and Order – Page 11**

officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Piotrowski*, 237 F.3d at 579 (quoting *Webster*, 735 F.3d at 841). "Actual or constructive knowledge of such custom must be attributable to the governing body of the [city] or to an official to whom that body had delegated policy-making authority." *Webster*, 735 F.2d at 841. "Isolated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for municipal section 1983 liability." *Piotrowski*, 237 F.3d at 579 (citation omitted).

The court now examines the allegations in the Amended Complaint to determine whether Plaintiff has alleged a persistent, widespread practice of DPD officers using excessive force against non-threatening, peaceful protestors and journalists covering protests as a means of intimidation and control. In the Amended Complaint, Plaintiff alleges that the DPD maintains a "dangerous policy" concerning KIPs. Am. Compl. ¶ 12. He asserts the City had "ample warnings" of the dangers associated with the use of KIPs prior to June 1, 2020. *Id.* ¶ 49. Plaintiff alleges that in 2018, a DPD officer sought to stop peaceful protesters—who were inspired to march after the shooting death of Botham Jean—from proceeding down a Dallas street. *Id.* ¶ 49. He fired multiple rounds of pepper balls in the direction of the crowd to deter them from marching. *Id.* According to Plaintiff, the DPD's use of KIPs quickly generated considerable controversy. *Id.* Then-DPD Chief Renee Hall gave a statement about the shooting, voicing concern and describing standards for KIP use: "They are only to be utilized if instructed to do so by the on[-]scene commander or if there is an immediate threat to the public." *Id.* The DPD later issued an incident report, receiving significant press attention, that concluded that the officer's actions were "consistent" with its general orders. *Id.* Plaintiff alleges the Botham Jean incident was a "public endorsement of the use

of KIP by an unqualified officer on non-threatening protestors," which "sent clear messages that were on display" on June 1, 2020. *Id.* ¶ 53. He alleges that based on this incident and former Chief Hall's statements and the incident report, the City gave a clear message that its officers "are free to use deadly weapons in crowds in a manner that violates DPD written policy and without departmental consequences[.]" *Id.*

Mr. Monacelli further alleges that on May 31, 2020, the evening before the June 1, 2020 incident giving rise to this civil action, an officer allegedly shot a protestor with a PepperBall weapon, and the officer was not charged with a crime. *Id.* ¶ 54. Plaintiff alleges that, based on this incident, "the City again sanctioned and ratified the use of KIP against unarmed, non-violent individuals at protests moving forward." *Id.* ¶ 55. Plaintiff alleges that the "Botham Jean incident and DPD's extensive use of KIPs during the George Floyd protests establish an unconstitutional pattern and practice of excessive force for the dispersal of non-violent protestors in Dallas." *Id.* ¶ 57.

The court agrees with the City that these allegations of isolated instances are insufficient to satisfy the elements of a "persistent, widespread practice of City officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (citation omitted); *see also Webster*, 735 F.2d at 842. As the Fifth Circuit instructed in *Webster*:

> If actions of city employees are to be used to prove a custom for which the municipality is liable, those actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees.

*Webster*, 735 F.2d at 842.

**Memorandum Opinion and Order – Page 13**

One incident of KIP deployment at the Botham Jean protest in 2018, followed by a separate instance the night of May 31, 2020, when an officer allegedly shot a protestor with a PepperBall weapon, is not a "persistent, widespread practice" that is "so common and well settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (citation omitted).[4]  Further, allegations concerning former-Chief Hall's alleged statement and the incident report in 2018 do not alter the court's conclusion. As set forth in the next section, former Chief Hall is not a final policymaker and any alleged statement she made in 2018 is, therefore, insufficient to connect the alleged unconstitutional policy to the City's actual policymaker, the City Council.[5]

As noted by the City, "Courts in the Fifth Circuit routinely dismiss section 1983 municipal lawsuits based on failure to identify a pattern of similar unconstitutional behavior at the pleading stage." City's Reply 8 (Doc. 13). *See, e.g.*, *Peña*, 879 F.3d at 623 (upholding dismissal of pleadings where Plaintiff failed to identify pattern); *Self v. City of Mansfield, Tex.*, 369 F. Supp. 3d 684, 702-03 (N.D. Tex. 2019) (dismissing plaintiff's complaint after finding, among other things, no alleged

---

[4] Insofar as Plaintiff contends that he has established a widespread pattern or practice of using excessive force to control protests based on allegations that a photographer and newspaper staffer were injured on May 30, 2020—the evening before he alleges he was struck with KIPs—the court is aware of no case law, and Plaintiff has cited none, indicating that a policymaker is on sufficient notice of a "pattern" of actions from two incidents twenty-four hours earlier, or that municipal liability can attach for the alleged failure to rectify whatever problems existed twenty-four hours later.

[5] In addition, as the City correctly notes, according to the allegations in the Amended Complaint, former Chief Hall's statement did not authorize or condone indiscriminate use of KIPs against protestors. Specifically, Plaintiff alleges:

> The day after the incident, then-DPD Chief Renee Hall said in a video published online that she was "concerned to learn of reports that one of our officers deployed potentially several pepper balls during a demonstration last night . . . They are only to be utilized if instructed to do so by the on[-]scene commander or if there is an immediate threat to the public."

Compl. ¶ 49.

**Memorandum Opinion and Order – Page 14**

"pattern of repeated constitutional violations" or "evidence of persistent, repeated, and constant violations of constitutional rights by virtue of this alleged failure to train."); *Harvey v. Montgomery Cnty.*, Tex., 881 F. Supp. 2d 785, 798 (S.D. Tex. 2012) (dismissing First Amendment claims for failure to allege a pattern of similar violations); *Pinedo v. City of Dallas, Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) ("To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'") (quoting *Piotrowski*, 237 F.3d at 582).

Finally, Plaintiff contends that, by allegedly not responding appropriately to the PepperBall incident at the Botham Jean protest in 2018, the City has "ratified" misuse of KIPs. *See* Am. Compl. ¶ 100. "One way of establishing liability is to show that a policymaker ratified the acts of a subordinate." *Young v. Board of Supervisors of Humphreys Cnty., Miss.*, 927 F.3d 898, 903 (5th Cir. 2019). "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Id.* (citation omitted). The Fifth Circuit has "limited the theory of ratification to extreme factual situations." *Id.* (citation omitted). "[U]nless the subordinate's actions are sufficiently extreme— for instance, an obvious violation of clearly established law—a policymaker's ratification . . . is insufficient to establish an official policy or custom." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009). Here, Plaintiff does not plead facts from which the court may reasonably infer that the City approved the incident and, in any event, the court concludes Plaintiff has not alleged an "extreme factual situation[]." *Young*, 927 F.3d at 903; *accord Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017) ("Ratification . . . is limited to 'extreme factual situations.'") (quoting *World Wide*, 591 F.3d at 755).

In summary, even viewing all well-pleaded facts as true and drawing all reasonable inferences in his favor, the court concludes that Plaintiff has failed to allege facts from which the court can reasonably infer a policy or widespread custom or practice of City employees using KIPs or other non-lethal methods against non-threatening, peaceful protestors and journalists covering protests as a means of intimidation and control. Accordingly, the court **grants** the City's Motion to Dismiss Count I on this basis.

### b. Policymaker

The City also moves to dismiss Count I on the grounds that Plaintiff has failed to allege facts supporting that a final policymaker had actual or constructive knowledge of a custom or policy of using excessive force against non-threatening, peaceful protestors and journalists covering protests as a means of intimidation and control. In response, Plaintiff contends that his "pleadings established that former DPD Chief Renee Hall was the City's official and final policymaker in control of DPD." Pl.'s Resp. 16. He argues that the City "impliedly delegated . . . policymaking authority" in policing and implementing departmental policies concerning the deployment of KIPs at protestors to former Chief Hall. *Id.* at 19-20.

A policymaker is one who takes the place of the governing body in a designated area of city administration, *Webster*, 735 F.2d at 841; governs not only conduct but decides the goals for a particular city function and devises the means of achieving those goals, *id.*; *Bennett*, 728 F.2d at 769; and is not supervised except as to the totality of his or her performance, *Webster*, 735 F.2d at 841; *Bennett*, 728 F.2d at 769. Policymaking authority requires more than a showing of mere discretion or decisionmaking authority on the part of the official. *Webster*, 735 F.2d at 841. If the governing body chooses to delegate policymaking authority to a city official, it does so in either of two ways. *Bennett*, 728 F.2d at 769. It may delegate policymaking power by an express

statement, job description, or other formal action; or it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role. *Id.* In essence, the governing body must expressly or impliedly acknowledge that the agent acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent. *Webster*, 735 F.2d at 841. Whether an official has been delegated final policymaking authority is a question of law for the judge, not a question of fact for the jury. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Further, as previously noted, courts should not grant motions to dismiss for the failure to plead the specific identity of the policymaker. *Groden*, 826 F.3d at 285.

In 2016, the Fifth Circuit in *Groden* revisited the question in a § 1983 action of "just who is the policymaker of the city of Dallas." *Id.* at 286. The court answered the question by "consulting [its] binding precedent," and stated that, "under Texas law, the final policymaker of the city of Dallas is the Dallas city council." *Id.* (citing *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 550 (5th Cir. 2008)).[6]

Plaintiff fails to plead nonconclusory allegations connecting the City's alleged unconstitutional policy or custom of using excessive force against non-threatening, peaceful protestors and journalists covering protests to the City's policymaker, the City Council, or any allegations that draw into question established Fifth Circuit law that the City Council is the final policymaker in the City of Dallas. In addition, Plaintiff fails to plead nonconclusory facts from

---

[6] In advancing his argument that former Chief Hall is a policymaker, Plaintiff confuses "final decisionmaker" with "policymaker." In *Bolton*, the Fifth Circuit distinguished "between final decisionmaking authority and final policymaking authority." *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008). That an official has the discretion to make the final decision over a particular function does not necessarily mean that the official has final policymaking authority over that function. *Id.* at 549 (footnote and citation omitted). Moreover, Plaintiff has not pleaded any facts to show that the Dallas City Council is not the final policymaker for the City of Dallas.

**Memorandum Opinion and Order – Page 17**

which this court may reasonably infer that the City Council delegated, expressly or impliedly, DPD policymaking authority to former Chief Hall.

For these reasons, the court concludes as a matter of law that former Chief Hall is not a final policymaker for the City with respect to the official policies or customs alleged in Plaintiff's § 1983 claims. Moreover, Plaintiff has failed to allege any facts that the City's actual policymaker, the City Council, had actual or constructive knowledge of any patterns, customs, policies, or practices of City employees misusing KIPs against protestors or journalists. Because Mr. Monacelli has alleged no facts that any final policymaker promulgated or ratified an unconstitutional policy, or from which a reasonable inference can be made that it promulgated or ratified an unconstitutional policy, he fails to allege sufficient facts to state a § 1983 claim for municipal liability. In addition, he fails to point to any nonconclusory facts in the Amended Complaint from which the court may infer that City policymakers were deliberately indifferent to any of the alleged unconstitutional policies alleged in the Amended Complaint. Accordingly, the court **grants** the City's Motion to Dismiss Count 1 on this basis.

### c. "Moving Force" Causation

Plaintiff alleges the written and unwritten policies and practices in deploying KIPs against crowds of protestors was the "moving force behind" his injuries inflicted by John Doe Officer 1 and John Doe Officer 2. *Id.* ¶¶ 71, 78-79. The City argues that, even if Plaintiff had alleged sufficient facts to establish a policy of custom, his "but for" allegations are insufficient to plead a direct causal link between a policy or custom of allowing use of using excessive force against non-threatening, peaceful protestors and journalists and his alleged injuries from the excessive force of John Doe Officer 1 and John Doe Officer 2.

**Memorandum Opinion and Order – Page 18**

To show "moving force causation," Plaintiff must demonstrate a "direct causal link" between the municipality's policy and the deprivation of his federal rights. *See Valle*, 613 F.3d at 542, 546. "[T]he connection must be more than a mere 'but for' coupling between cause and effect." *Id.*

None of Plaintiff's allegations sufficiently shows the City's alleged policy or custom caused the denial of Plaintiff's Fourth Amendment right to be free from the use of excessive force or was the "moving" force behind his injury. The court agrees with the City that "[i]f one non-deadly incident, which goes unratified, can suffice to constitute sufficient municipal causation for an event two years later by different officers, then the words 'actual cause' will fail to mean anything." Mot. to Dismiss 22 (Doc. 8).

Accordingly, the court **grants** the City's Motion to Dismiss Count 1 on this basis.

## 2. Failure-to-Train Theory of Municipal Liability – Count IV

As the court stated previously, in Count IV, Plaintiff seeks to establish municipal liability under a failure-to-train theory. With respect to the alleged excessive force used by John Doe Officers 1 and 2, he alleges that the City is responsible "for training on the use of firearms with regard to allegedly less lethal impact weapons and [KIPs]." Am. Compl. ¶ 96. He alleges the City knew the risks "but failed to institute any training with regard to the range and risks of significant injury from the projectile." *Id.* ¶ 97. With respect to the alleged violations of his First Amendment rights as a journalist, he alleges that the City and DPD have a policy to "not restrict movement of newspapers, unless their actions clearly and directly interfere with police operations or investigations." *Id.* ¶ 104. He contends that the City is liable for the John Doe Defendants' violation of his constitutional rights because the City "was deliberately indifferent in its failure to train or supervise [the John Doe Defendants] to follow this DPD policy, and this failure to train led to the

deprivation of [his] constitutional rights[.]" *Id.* He also contends in Count IV that the City "failed to adequately train, supervise, or discipline its officers about the First Amendment right to photograph and video in public, including during public protests." *Id.* ¶ 106.

The City contends that Plaintiff has failed to plead sufficient facts regarding his failure-to-train claim. "The failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes the injury." *Valle*, 613 F.3d at 544 (citation omitted). "'In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.'" *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)). "To prevail on a failure-to-train theory, [Plaintiff] must plead facts plausibly establishing '(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question.'" *Ratliff v. Aransas Cnty., Tex.*, 948 F.3d 281, 285 (5th Cir.), *cert. denied*, 141 S. Ct. 376 (2020) (quoting *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010)).

Failure-to-train allegations can be the basis for liability under 42 U.S.C. § 1983 only if the "failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. "'Deliberate indifference is more than mere negligence.'" *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010) (quoting *Conner v. Travis Cnty., Tex.*, 209 F.3d 794, 796 (5th Cir. 2000)). Rather, a plaintiff "must show that 'in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonally be said to have been deliberately indifferent to the need.'"

*Id.* (quoting *City of Canton*, 489 U.S. at 390). Just as proof of a custom or practice requires more than a showing of isolated acts, proof of deliberate indifference, generally requires a showing "of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Burge v. Saint Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003) (citation omitted). Deliberate indifference generally requires that a plaintiff demonstrate "at least a pattern of similar violations" arising from training that is so clearly inadequate as to be "obviously likely to result in a constitutional violation." *Id.*

Other than conclusory allegations and boilerplate recitations, the Amended Complaint does not contain sufficient allegations to state a plausible claim that the City's training policies or procedures were inadequate, let alone facts that could state a claim that the need for more or different training was obvious. As previously discussed, Plaintiff fails to allege facts from which the court can reasonably infer a pattern of similar constitutional violations. Therefore, Plaintiff cannot state a claim for failure to train.[7]

Accordingly, the court grants the City's Motion to Dismiss Count IV.

## IV.    The John Doe Defendants (as sued in their individual capacity)

Federal Rule of Civil Procedure 4(m) requires that service be made on a defendant within ninety days after the filing of the complaint. Fed. R. Civ. P. 4(m). Plaintiff filed this action on

---

[7] Plaintiff, as part of his pleadings, suggests that the City can be liable under the single-incident exception, which recognizes that in a limited set of cases, a plaintiff, unable to show a pattern of constitutional violations, may establish deliberate indifference by "showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Burge v. Saint Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003). The single incident exception, however, is a narrow one, and one that the Fifth Circuit has been reluctant to expand. *See Pineda v. City of Houston*, 291 F.3d 325, 334–35 (5th Cir. 2002) ("Charged to administer a regime without respondeat superior, we necessarily have been wary of finding municipal liability on the basis of [the single-incident] exception for a failure to train claim."). "Accordingly, the exception will apply only whe[n] the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Burge*, 336 F.3d at 373 (citation omitted). Plaintiff's allegations fall woefully short of coming within the ambit of this narrow exception.

October 26, 2021, more than eleven months ago, and the John Doe Defendants have not been identified or served. When service is not made on a defendant within ninety days after filing of the complaint, the court may, after notice to the plaintiff, dismiss the action as to that defendant without prejudice, or, instruct the plaintiff to effect service within a specific time. Fed. R. Civ. P. 4(m). Accordingly, the court **directs** Plaintiff to effect service on the John Doe Defendants no later than October 31, 2022, or show good cause in writing by October 31, 2022, for the failure or inability to effect service on these Defendants.

## V.    Conclusion

For the reasons stated herein, the court **grants** the City of Dallas's Motion to Dismiss Plaintiff's Amended Complaint (Doc. 8). The court believes, because of Supreme Court and Fifth Circuit precedent, that Plaintiff should be permitted an opportunity to amend his pleadings with respect to those allegations that are factually deficient. In addition, Plaintiff requests leave to amend in his response brief. Accordingly, Plaintiff shall file an amended complaint by **October 31, 2022**. Any motions to dismiss or answers must be filed within 14 days after service of Plaintiff's amended pleading. If Plaintiff fails to cure the pleading deficiencies identified by the court by this date, his claims against the City are subject to dismissal with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), or without prejudice pursuant to Federal Rule of Civil Procedure 41(b) for failure to comply with a court order.

Further, Plaintiff is hereby **directed** to effect service on the John Doe Defendants no later than **October 31, 2022**, or show good cause in writing by **October 31, 2022**, for the failure or inability to effect service on these Defendants. *Failure of Plaintiff to effect service or show good cause in writing for such failure by the deadline set by the court will result in dismissal without prejudice of this action against these Defendants under Federal Rules of Civil Procedure 4(m).*

**It is so ordered** this 30th day of September, 2022.

Sam A. Lindsay
United States District Judge