IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN M. MONACELLI, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-2649 |
| | § | |
| CITY OF DALLAS, and OFFICERS | § | |
| JOHN DOE 1-4. Individually and in | § | |
| his official capacity as a Dallas Police | § | |
| Department Police Officer, | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANT CITY OF DALLAS'S MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED COMPLAINT, AND BRIEF IN SUPPORT**

CITY ATTORNEY OF THE CITY OF DALLAS

Christopher J. Caso
City Attorney

*/s/ J. Cheves Ligon*
J. Cheves Ligon
Senior Assistant City Attorney
Texas State Bar No. 24070147
John.Ligon@Dallas.gov

7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone:   214-670-1236
Facsimile:   214-670-0622
*Attorneys for Defendant City of Dallas*

**TABLE OF CONTENTS**

I.      SUMMARY OF MOTION.................................................................................1

II.     BRIEF PROCEDURAL HISTORY AND FACTUAL SUMMARY ...............................2

III.    APPLICABLE LEGAL STANDARDS FOR 12(b)6 DISMISSAL...................................4

IV.     ARGUMENT AND AUTHORITIES................................................................6

IV.     CONCLUSION...............................................................................21

CERTIFICATE OF SERVICE .......................................................................22

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................. 5, 6, 7

*Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397 (1997) ................................ 22

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................. 5, 6

*Bolton v. City of Dallas, Tex.*, 541 F.3d 545 (5th Cir. 2008) ........................................... 13, 14, 15

*Brown v. Tarrant County*, 985 F.3d 489 (5th Cir. 2021) ................................................. 8

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) ........................................... 20, 21

*Conley v. Gibson*,
   355 U.S. 41 (1957) ................................................................. 6

*Connick v. Thompson*, 563 U.S. 51 (2011) ................................................. 20

*Davis v. Baylor Regional Med. Ctr. at Grapevine*, No. 3:11-cv-1350, 2013 WL 866173 (N.D. Tex. Mar. 8, 2013) ................................................................. 19

*Dobbins v. City of Dallas*, No. 3:20-CV-1727-K, 2021 WL 4395817 (N.D. Tex. June 24, 2021) ................................................................. 11

*Fernandez-Montes v. Allied Pilots Ass'n*,
   987 F.2d 278 (5th Cir. 1993) ................................................................. 6

*Groden v. City of Dallas*,
   826 F.3d 280 (5th Cir. 2016) ................................................................. 8

*Hughes v. City of Dallas*, No. 3:18-CV-1770-B, 2020 WL 4670659  (N.D. Tex. Aug. 11, 2020) ................................................................. 12

*Hutcheson v. Dallas County*, 994 F.3d 477 (5th Cir. 2021) ................................................. 8

*In re Katrina Canal Breaches Litig.*,
   495 F.3d 191 (5th Cir. 2007) ................................................................. 5

*Jackson v. Procunier*,
   789 F.2d 307 (5th Cir. 1986) ................................................................. 5

*James v. Harris County*, 577 F.3d 612 (5th Cir. 2009) ................................................. 9

*Jean v. City of Dallas, Texas* (N.D. Tex. Aug. 12, 2019), *report and recommendation adopted,* No. 3:18-CV-2862-M, 2019 WL 7187104 (N.D. Tex. Dec. 23, 2019) .............. 4, 10

*Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) ................................................................................ 5

*Littell v. Hous. Indep. Sch. Dist.*,
    894 F.3d 616 (5th Cir. 2018) ................................................................................. 8

*Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258 (5th Cir. 2019) .................................................................................................................. 16

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*,
    369 F.3d 464 (5th Cir. 2004) ................................................................................. 5

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978) ............................................................................................... 7

*Mosser v. Haney*, No. CIV.A.3:03CV2260-B, 2005 WL 1421440 (N.D. Tex. June 17, 2005) ... 13

*New World Int'l, Inc. v. Ford Glob. Techs., LLC*, No. 3:16-CV-1112-M, 2017 WL 1078525 (N.D. Tex. Mar. 22, 2017) ........................................................................................... 19

*Papasan v. Allain*,
    478 U.S. 265 (1986) ............................................................................................... 5

*Peña v. City of Rio Grande*,
    879 F.3d 613 (5th Cir. 2018) ......................................................................... 8, 9, 20

*Pinedo v. City of Dallas*, No. 3:14-cv-958-D, 2015 WL 5021393 (N.D. Tex. Aug. 25, 2015) 9, 12

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) ..................................... 2, 7

*Sanchez v. Young County*, 956 F.3d 785 (5th Cir. 2020) .............................................. 8, 24

*Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162 (5th Cir. 1997) ....................... 9

*Trotter v. City of Dallas, Texas*, No. 3:19-CV-1327-L-BT, 2020 WL 5260546 (N.D. Tex. Aug. 14, 2020) ...................................................................................................... 11, 12, 16

*Valle v. City of Houston*, 613 F.3d 536 (5th Cir. 2010) ........................................... 20, 23

*VS2, LLC v. United States*, 155 Fed. Cl. 738, 768 (2021) ........................................... 18

*Webster v. City of Houston*, 735 F.2d 838 (5th Cir. 1984) ......................................... 10

*Zarnow v. City of Wichita Falls*, 614 F.3d 161 (5th Cir. 2010) .................................... 9

**STATUTES**

42 U.S.C. § 1983............................................................................................................. 2, 8

**RULES**

Fed. R. Civ. P. 12 (b)(6)..................................................................................................... 5

Fed. R. Civ. P. 8(a)(2)........................................................................................................ 7

**REGULATIONS**

DPD General Order 609.00.............................................................................................. 17

DPD General Order 902.00.............................................................................................. 17

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant City of Dallas ("City"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, files this Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion"). Specifically, the City moves to dismiss all claims alleged against it in Plaintiff's Second Amended Complaint (ECF No. 25) (the "Complaint"), and respectfully shows the Court as follows:

## I.    SUMMARY OF MOTION

Plaintiff's prior Complaint, which this Court dismissed for failure to state a claim, largely mirrors this one.

Despite having been fully apprised that one prior occurrence of alleged City employee malfeasance at a protest did not form the requisite "pattern" for *Monell* liability, the new Complaint adds no more alleged instances. Despite having been fully apprised that under settled law the then-DPD Chief Reneé Hall was not the City policymaker, Plaintiff's new Complaint redoubles his prior Complaint's assertions that all of the City's alleged bad acts flowed from her. And despite having been fully apprised that one prior alleged occurrence of a bad act could not constitute "moving force" causation for his injuries, Plaintiff points this Court to nothing beyond speculative boilerplate.

Plaintiff adds few new factual allegations but tosses in a handful of new – if vague – policy and training causes of action that nonetheless sound in the same alleged bad acts complained of in his prior Complaint. Yet any cause of action Plaintiff could lodge would still fail for the same reasons for which Plaintiff's prior Complaint failed: the City had no policy or practice of condoning the deprivation through force or false arrest of any individual's rights to protest or any journalist's rights to report.

Even assuming Plaintiff received the injuries he claims, nothing in the City's record alleged in the new Complaint states a claim that the City was plausibly responsible. This case must be dismissed.

## II.  BRIEF PROCEDURAL HISTORY AND FACTUAL SUMMARY

On October 26, 2021, Plaintiff filed suit under 42 U.S.C. § 1983, asserting claims against the City and John Doe Officers for the alleged deprivation of Plaintiff's rights secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution. (Doc. no. 1.) Plaintiff subsequently filed his First Amended Complaint on November 1, 2021. (Doc. no. 4.) This Motion concerns Plaintiff's Second Amended Complaint. (Doc. no. 25.)

### A.  This Court's Dismissal of Plaintiff's First Amended Complaint.

On September 30, 2022, this Court granted the City's prior Motion to Dismiss Plaintiff's First Amended Complaint. (Doc. no. 23.) Plaintiff's prior Complaint alleged one custom/policy "of using excessive force against non-threatening, peaceful protestors and journalists covering protests as a means of intimidation and control" and one failure-to-train claim for the City's alleged failure to "institute any training with regard to the range and risks of significant injury from" certain types of less-than-lethal firearms." *Id*. p. 9.

As to Plaintiff's policy cause of action, this Court found that the prior Complaint did not allege a pattern or practice. Specifically, this Court found a prior incident involving a deployment of a pepper ball weapon at a Botham Jean protest in 2018 and the activities on the evening prior to the alleged deprivations here were insufficient to constitute a "'persistent, widespread practice' that is 'so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id*. pp. 12-14. (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001)).

Critically, this Court explained that

former Chief Hall is not a final policymaker and any alleged statement she made in

2

2018 is, therefore, insufficient to connect the alleged unconstitutional policy to the City's actual policymaker, the City Council.

*Id*. p. 14.

Further, this Court found that Plaintiff had failed to state a claim as to the identity, and alleged deliberate indifference, of the City's policymaker. This Court expressly held that binding precedent has always determined that the City's policymaker is the City Council, not a DPD official:

> For these reasons, the court concludes as a matter of law that former [DPD] Chief Hall is not a final policymaker for the City with respect to the official policies or customs alleged in Plaintiff's § 1983 claims. Moreover, Plaintiff has failed to allege any facts that the *City's actual policymaker, the City Council*, had actual or constructive knowledge of any patterns, customs, policies, or practices of City employees misusing KIPs against protestors or journalists.

*Id*. p. 18. (emphasis added.)[1]

This Court also found Plaintiff's failure-to-train allegations did not state a claim. *Id*. pp. 19-21.

> Other than conclusory allegations and boilerplate recitations, the Amended Complaint does not contain sufficient allegations to state a plausible claim that the City's training policies or procedures were inadequate, let alone facts that could state a claim that the need for more or different training was obvious. As previously discussed, Plaintiff fails to allege facts from which the court can reasonably infer a pattern of similar constitutional violations.

*Id.* at p. 21.

This Court's Order permitted Plaintiff an opportunity to file an amended complaint to cure any deficiencies. *Id*. p. 22.

The new Complaint does not allege any significant new facts regarding the gravamen of Plaintiff's particular grievance: he purports to be a journalist who was arrested without probable

---

[1] This Court also found Plaintiff had failed to state facts from which this Court could infer "moving force" causation for this policy claim. *Id*. pp. 18-19.

cause in violation of his First Amendment rights and struck by a less-than-lethal weapon in violation of his Fourth Amendment rights during the 2020 George Floyd protests.[2] *Compare* Am. Compl. (Doc. no. 4) ¶¶ 17-44 *with* 2d. Am. Compl. (Doc. no. 25) ¶¶ 35-66.

Plaintiff's new Complaint lodges five causes of action against the City: (1) "Failure to Adopt Policies and Training," 2d. Am. Compl. ¶¶ 115-24; (2) "Municipal Liability – Unlawful Arrest," *id*. ¶¶ 125-36; (3) "Municipal Liability – Excessive Use of Force," *id*. ¶¶ 137-48; (4) "Municipal Liability – Failure to Discipline," *id*. ¶¶ 149-58; (5) "Municipal Liability – First Amendment," *id*. ¶¶ 159-65.[3]

The new Complaint does not allege any new patterns or practices of First or Fourth Amendment violations of journalists for protestors' rights. Instead, it again cites a single incident of Pepper Ball deployment in 2018 and incidents the evening prior to Plaintiff's alleged injury. *See* Am. Compl. ¶¶ 49-55; 2d. Am. Compl. ¶¶ 71-79.

In its place, as explained below, Plaintiff's new Complaint (1) doubles down on Plaintiff's prior attempts to claim the then-DPD Chief was the City's policymaker; and (2) claims certain police regulations ("General Orders") are deficient. This Motion seeks dismissal of all causes of action.

### III.    APPLICABLE LEGAL STANDARDS FOR 12(b)6 DISMISSAL

Rule 12(b)(6) provides for dismissal of a claim if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6)

---

[2] The City will not repeat the salient facts of the case, all of which are summed up in this Court's prior dismissal order. *See generally*, doc. no. 23. Instead, the City will focus on Plaintiff's attempts to "cure" the deficiencies in his prior Complaint.

[3] Plaintiff's prior Complaint lodged three causes of action: (1) "Violation of Plaintiff's First and Fourteenth Amendment Rights," Am. Compl. ¶¶ 81-89; (2) "Violation of Plaintiff's Fourth Amendment Right (Unlawful Seizure)," *id*. ¶¶ 90-94; and (3) "Violation of Plaintiff's First, Fourth, and Fourteenth Amendment Rights," *id*. ¶¶ 95-111.

tests the legal sufficiency of the claims stated in the complaint and must be evaluated solely on the basis of the pleadings. *Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986). The allegations contained in the complaint are to be construed in the plaintiff's favor and all *well-pleaded* facts are to be accepted as true. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). However, conclusory allegations and legal conclusions couched as factual allegations are not to be accorded a presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (emphasizing that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")); *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) ("Although we must accept as true the well-pleaded allegations of a complaint . . . we do not accept as true conclusory allegations in the complaint"); *see also Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (legal conclusions masquerading as factual assertions are insufficient to prevent dismissal for failure to state a claim). While the complaint need not contain "detailed factual allegations," the plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Therefore, and critically, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Furthermore, the alleged facts must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555 (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). Thus, to

survive a motion to dismiss made pursuant to Rule 12, a complaint must contain sufficient factual

matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* . at 570. "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S.

at 678 (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but

it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation

omitted). If a complaint pleads facts that are "merely consistent with" a defendant's liability, it

stops short of the line between possibility and plausibility of entitlement to relief. *Id.*. (internal

quotation marks and citation omitted). "[W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (applying Fed. R. Civ. P. 8(a)(2)

(requiring "a short and plain statement of the claim showing the pleader is entitled to relief[]")).

## IV. ARGUMENT AND AUTHORITIES

Plaintiff seeks to hold the City liable under 42 U.S.C. § 1983, which makes liable "[e]very

person" who, under color of state law, violates federal constitutional rights. For this purpose,

municipal entities like the City qualify as "persons." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

690 (1978). But the City "cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.*

Isolated unconstitutional actions by municipal employees will almost never trigger municipal

liability. *Piotrowski*, 237 F.3d at 578 (citations omitted). Rather, to hold the City liable under §

1983 a plaintiff must establish that an "official policy" of the City *itself*—and not the policy of an

individual city official—was the "moving force" and actual cause of the loss of constitutional

rights and any resultant harm. *Id.*

Thus, to state a § 1983 claim against the City, the Complaint must allege sufficient facts to

permit the reasonable inference 1) that a constitutional violation occurred, and 2) an "official

policy" attributable to the City's policymakers that 3) "was the moving force" behind it. *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622–23 (5th Cir. 2018); *see Peña v. City of Rio Grande*, 879 F.3d 613, 621 (5th Cir. 2018); *Groden v. City of Dallas*, 826 F.3d 280, 283–85 (5th Cir. 2016).

At the pleading stage, a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell*, 436 U.S. at 694); *see also Hutcheson v. Dallas County*, 994 F.3d 477, 483 (5th Cir. 2021) (rejecting the argument that a district court errs by dismissing a *Monell* claim without first analyzing the underlying constitutional violation). Thus, even if Plaintiff has alleged plausible constitutional violations, which the City does not concede, Plaintiff survives the City's motion to dismiss their *Monell* claims only by

> identify[ing] "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of *respondeat superior*" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

*Hutcheson*, 994 F.3d at 482; *see also Brown v. Tarrant County*, 985 F.3d 489, 497 & n.11 (5th Cir. 2021) (noting that where a plaintiff's claim fails as to one prong, a court "need not consider whether [his] claim also fails the other two *Monell* prongs") (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010)).

As to alleging an official policy, "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña*, 879 F.3d at 622 (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (footnote omitted). And, "'[t]o

establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" *Pinedo v. City of Dallas*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) (quoting *Piotrowski*, 237 F.3d at 582); *see also James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) ("Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" (quoting *Piotrowski*, 237 F.3d at 579 (quoting, in turn, *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc))).

Plaintiff's new Complaint rewords his prior causes of action, but the substance of them is the same: the City, he alleges, maintains unconstitutional policies and fails to train/supervise its employees. As this Court has noted, failures to train, supervise, and discipline are all analyzed the same. *Jean v. City of Dallas, Texas*, 2019 WL 7195308, at *5 n.6 (N.D. Tex. Aug. 12, 2019), *report and recommendation adopted*, 2019 WL 7187104 (N.D. Tex. Dec. 23, 2019)( "Although Plaintiffs separately assert claims for failure to train and failure to supervise or discipline, the elements required to prove a claim under either theory are the same.") Regardless, all of Plaintiff's theories fail for lack of an unconstitutional policy, deliberate indifference, and causation.

A.  **The Complaint's New Allegations Fail to State A Claim.**

Given that Plaintiff's new Complaint largely mirrors his prior pleading, the City will not rehash its arguments at length. The City will focus this Motion on Plaintiff's handful of modifications found in his new Complaint.

8

      a. **The DPD Chief Was Not the City's Policymaker – Yet Plaintiff's Complaint Alleges All Unconstitutional Acts Originated By and Through Her Alone.**

This Court rejected Plaintiff's prior attempt to allege that the City's policymaker at the time of the incidents at issue in this case was former DPD Chief Hall. (Doc. no. 23 pp. 16-17.) As this Court noted,

> [i]n 2016, the Fifth Circuit in *Groden* revisited the question in a § 1983 action of "just who is the policymaker of the city of Dallas." The court answered the question by "consulting [its] binding precedent," and stated that, "under Texas law, the final policymaker of the city of Dallas is the Dallas city council."

*Id.* p. 17. (citation omitted).

Since 2016, just like before, litigants have nonetheless attempted to plead that the DPD Chief is the City's policymaker and claim he/she has personally enacted unconstitutional policies and been deliberately indifferent to citizens' rights – presumably to avoid the inevitability of dismissal due to the complete absence of unconstitutional policies or indifference on the City Council's part. This Court has rejected those and thereafter found plaintiffs had therefore failed to meet the "policy" prong of *Monell*. For example, this Court found a plaintiff's claims failed because he specifically claimed Chief Hall had promulgated an unconstitutional policy: "His allegations are not deficient because he fails to identify a policymaker, but because he affirmatively identifies an individual, the police chief, *who is not the City of Dallas's policymaker as a matter of law*, absent special delegation." *Trotter v. City of Dallas, Texas*, No. 3:19-CV-1327-L-BT, 2020 WL 5260546, at *6 (N.D. Tex. Aug. 14, 2020), *report and recommendation adopted*, No. 3:19-CV-1327-L-BT, 2020 WL 5250548 (N.D. Tex. Sept. 2, 2020) (emphasis added). Indeed, in recent litigation related to the very same 2020 George Floyd protests, this Court found that similar facts pled did not show Chief Hall had been delegated policymaking authority. *Dobbins v. City of Dallas*, No. 3:20-CV-1727-K, 2021 WL 4395817, at *5 (N.D. Tex. June 24, 2021), *report and*

*recommendation adopted*, No. 3:20-CV-1727-K, 2021 WL 3781927 (N.D. Tex. Aug. 25, 2021), *appeal dismissed*, No. 21-10983, 2021 WL 7829760 (5th Cir. Dec. 16, 2021) (rejecting arguments that City Council had delegated policymaking power to Chief Hall.)

Plaintiff makes several attempts, and fails, to plead his way around the settled case law. The City addresses each in turn.

### 1.  The City's Charter Never Delegated Policymaking Authority to the DPD Chief.

Despite this Court's repeated rejections of this very same argument, Plaintiff claims that the City's Charter grants the DPD Chief policymaking authority where it "delegates that the DPD Chief 'shall have immediate direction and control of the [DPD] . . . and shall promulgate all orders, rules, and regulations for government of the [DPD]." Compl. ¶ 17. (citing Dallas, Tex., Charter ch. XII, § 2(1)). This Court has continually ruled that this section of the City's Charter does no such thing, as"[t]his authority . . . does not permit the court to conclude as a matter of law that the Chief of Police is a final policymaker for the City." *Pinedo*, 2015 WL 221085, at *5 (referring to Dallas, Tex., Charter ch. XII, § 2(1)). "Rather, this section of the City's charter indicates the chief of police is subject to the city manager's supervision and does not have final authority to establish municipal policy with respect to police procedures." *Trotter*, 2020 WL 5260546, at *7 (citation omitted.) Indeed, "[t]his Court has considered this particular language from the City's charter on several occasions 'and concluded that the delegation it contains demonstrates that the Chief of Police is *not* the final policymaker for the Dallas Police Department because [she] is at all times subject to the rules and supervision of the City Manager.'" *Id.* (quoting *Pinedo*, 2015 WL 221085 at *5) (emphasis in original); *see also Hughes v. City of Dallas*, No. 3:18-CV-1770-B, 2020 WL 4670659, at *4 (N.D. Tex. Aug. 11, 2020) (Boyle, J.) (declining to accept amended complaint "to the extent that it finds that Hughes has alleged a plausible claim of municipal liability against the

City of Dallas" where plaintiff's "amended complaint lack[ed] . . . factual allegations to show that it is plausible that Chief Brown was a final policymaker."); *Mosser v. Haney*, No. CIV.A.3:03CV2260-B, 2005 WL 1421440, at *4 (N.D. Tex. June 17, 2005) (analyzing City Charter and finding "[t]he Chief of Police is not the policymaker for Dallas's police department, as he remains subject to the rules and supervision of the City Manager.")

In sum, Plaintiff's reliance on his misinterpretation of the City's Charter cannot permit a reasonable inference that the City delegated policymaking authority to the DPD Chief.

### 2.   The City Code Does Not Expressly Delegate Policymaking Authority to the DPD Chief.

This Court's dismissal order identified a fatal flaw in Plaintiff's prior attempts to designate the former DPD Chief as the City's policymaker:

> In advancing his argument that former Chief Hall is a policymaker, Plaintiff confuses "final decisionmaker" with "policymaker." In *Bolton*, the Fifth Circuit distinguished "between final decisionmaking authority and final policymaking authority." *Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008). That an official has the discretion to make the final decision over a particular function does not necessarily mean that the official has final policymaking authority over that function. *Id*. at 549 (footnote and citation omitted).

(Doc. no. 23 n.6)

In his new Complaint, Plaintiff attempts to confuse the terms again – this time by citing the Dallas City Code.

Plaintiff cites City Code provisions that provide various powers for the DPD Chief of Police as though they are express delegations of policymaking authority. For example, he alleges that the City Code delegates the DPD chief with "final authority" regarding assigning DPD officers' their round of duty. Compl. ⁋ 18 (citing Dallas City Code Ch. 37.) Further, he alleges the City Code's grant of authority to "oversee the administration of the [DPD] in accordance with" the City's Charter "expressly delegates" the DPD Chief policymaking authority. *Id*. ⁋ 20 (citing

same.) He also cites DPD's own internally-produced General Orders to assert, presumably, the DPD has granted itself policymaking authority. *Id.* ¶ 21.

None of the above, or anything else cited in the Complaint, amount to an express delegation of actual policymaking authority.[4] Instead, Plaintiff portrays the City Code's assignment of general administration to the DPD Chief as the City Council's relinquishment of its powers. To hold that assignment of such authorities transmogrifies a decisionmaker into a policymaker would effectively render *Monell* liability into *respondeat superior*. In the *Bolton* decision, the Fifth Circuit quoted the Seventh Circuit's summation as to why:

> [i]f it were enough to point to the agent whose act was the final one in a particular case, we would have vicarious liability. Action in the course of one's duty is the basis of vicarious liability. That a particular agent is the apex of a bureaucracy makes the decision "final" but does not forge a link between "finality" and "policy."

*Bolton*, 541 F.3d at 549 (quoting *Auriemma v. Rice,* 957 F.2d 397 (7th Cir.1992)).

Simply put, "[t]he finality of an official's action does not therefore automatically lend it the character of a policy." *Id.* at 550.[5]

While the DPD Chief is vested with *administrative* powers – some of which may fairly be characterized as "final" – the City Council never delegated its *policy* powers to the DPD Chief. No case law exists that shows the City Code has conferred anything other than normal decisionmaking powers.

---

[4] Plaintiff also references City Charter provisions that grant the DPD Chief the right to discipline officers for breaking laws or other misbehavior. Compl. ¶¶ 33-34. Countless government officials throughout the State – including many within the same police departments – possess the power to discipline employees. The City is unaware of any *Monell* case law that ascribes municipal liability based on an official's acts purely because they had disciplinary authority.

[5] Plaintiff attempts to prop up his administrative-as-policymaking authority claims by noting that DPD Chiefs have announced new procedures and internal "policies," even quoting a newspaper that describe a DPD Chief as implementing "a host of policies." Compl. ¶¶ 22-30. He also cites a single line in the City Code's designation of the Chief's powers that describes his or her ability to prevent crime and arrest offenders as "the same powers as the sheriff," as, in effect, nullifying all other City Charter and Code designations of City Council policymaking authority over law enforcement because of how courts have interpreted laws related to elected county sheriffs. *Id.* ¶ 19. If repurposing non-lawyers' use of words that also happen to be jurisprudential terms of art is sufficient to state a legal claim, then facts and case law will give way to mere recitations of cherrypicked shibboleths.

The Complaint does not allege the City Council was or should have been aware of any alleged policy or training shortcomings, much less the promulgator of same, even though it has been repeatedly found that the City Council is the policymaker for the City. *Bolton*, 541 F.3d at 550. Instead, all alleged unconstitutional policies and deliberate indifference come by way of then-Chief Hall. *See, e.g.* Compl. ⁋⁋ 77-78 (" . . . DPD Chief Hall was aware that there was a substantial likelihood that DPD officer would fire KIPs directly into crowds . . . [yet] failed to implement any policies to prevent this . . . ") Indeed, throughout Plaintiff's causes of action, he repeats his assertion that Chief Hall was the source of the improper policies. *See id*. ⁋ 117 (the City "under delegated official policymaker DPD Chief Hall . . . "); *id*. ⁋⁋ 128-29 (alleging Chief Hall "created and promulgated" City's allegedly problematic "mass arrest policies" in DPD General Order 609.00); *id*. ⁋⁋ 139-40 (alleging same); *id*. ⁋ 154 ("As a result of the single incident exception, Defendant, under DPD Chief Hall, was deliberately indifferent . . . "); ⁋ 161 ("Defendant, through delegated official policymaker DPD Chief Hall, utilized DPD General Orders . . . to suppress Plaintiff's rights . . ."); ⁋ 163 ("The policy [of violating the First Amendment] delineated above was implemented and promulgated by DPD Chief Hall with deliberate indifference . . .")

Therefore, because Plaintiff specifically pleads that the DPD Chief was the relevant "policymaker" and was the ultimate source of all of Plaintiff's alleged deprivations, all roads that lead to City liability must pass through her.

It is true that the Fifth Circuit has found that "plaintiffs can state a claim for municipal liability as long as they plead sufficient facts to allow the court to reasonably infer that the [policymaker] either adopted a policy that caused [the] injury or delegated to a subordinate officer the authority to adopt such a policy." *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 271 (5th Cir. 2019) (citation omitted.) However, as in *Trotter*, Plaintiff

here "affirmatively pleaded" that the police chief is the City's policymaker responsible for the policy he alleges is unconstitutional. Therefore, [Plaintiff's] § 1983 municipal-liability claim fails because the chief of police is not the City of Dallas's policymaker . . ." *Trotter,* 2020 WL 5260546, at *8. Consequently, as was the case in *Dobbins* and as in *Trotter*, at the outset, Plaintiff's "municipal-liability claim fails because the chief of police is not the City of Dallas's policymaker as a matter of law, absent special delegation, and [Plaintiff does] not allege the city council delegated policymaking authority to the police chief . . ." regarding any of the alleged unconstitutional policies or training failures. *Id*.

### b. Plaintiff Pleads No Facts from Which This Court Can Infer Any Written City Policies Were Unconstitutional.

Employing boilerplate, Plaintiff now claims his false arrest was the result of DPD General Order 609.00. Compl. ¶ 64. The new Complaint claims "DPD General Order 609.00" governs "mass arrests" and is unconstitutional because it "fails to include a requirement that charges resulting from mass arrests are bound by sufficient probable cause; instead it only requires that arrests be approved by a supervisor from the DPD Patrol Division Investigative Unit."[6] Compl. ¶¶ 64-65. First, without the actual text of the General Order, this Court (and the City) must simply assume Plaintiff's descriptions are accurate. Second, Plaintiff attempts a sleight of hand by claiming that since the specific General Order allegedly did not *specifically mention* probable cause for arrests, the General Order somehow *gave free rein* to City employees to disregard all other training, General Orders, and constitutional restrictions regarding probable cause. Plaintiff does not allege the "mass arrests" procedures or General Orders superseded other City rules or

---

[6] Plaintiff claims the then-DPD Chief promulgated the General Orders. *Id*. 107. As noted above, the DPD Chief is not the City policymaker, so and claims that any General Orders were constitutionally defective – without actual or constructive knowledge on the City Council's part – necessarily fail.

represented the City's final and sole word on arrests, but simply claims it did not mention one of the many constitutional protections to which citizens are entitled.[7]

Plaintiff makes a similar claim about General Order 902.00, which "did not include any provisions outlawing or prohibiting officers from firing or deploying direct contact hits into a crowd." Compl. ⁋ 75. This, Plaintiff claims, means "DPD Officers thus followed DPD policies whenever they fired KIPs directly at a crowd." *Id*. Taking, again, Plaintiff's word that a General Order did not specifically prohibit misuse of force still does not mean it abrogated all other restrictions on misuse of force, much less represented the final word on City policy.

At bottom, Plaintiff claims that if one internal regulation did not specifically contain constitutional restrictions still found in other regulations, it therefore represents unconstitutional municipal policies. This is simply a non-sequitur. As one court phrased it in another context, "[plaintiff's] attempt to steal a base – that is, skipping over an essential (but faulty) premise of its argument – must be rejected." *VS2, LLC v. United States*, 155 Fed. Cl. 738, 768 (2021).

Lastly, General Orders are not written policies promulgated by the City Council. Instead, "[t]he Chief of Police will approve General Orders to establish: 1. Departmental policy or procedures; 2. Policy or procedures affecting two or more bureaus. 3. Specific responsibilities and/or duties." DPD General Order 202.01(A). As noted above, the DPD Chief is a decisionmaker, not a policymaker, so without a pattern or practice from which the City Council should have

---

[7] The City requests this Court take judicial notice of the fact that the DPD General Orders stretch hundreds of pages and regulate DPD actions ranging from runaway children, auditing citation books, and arrest procedures. https://dallaspolice.net/resources/Shared%20Documents/General-Orders.pdf (last visited 11/3/22.) Simply taking one General Order and claiming it does not contain specific restrictions would render virtually every General Order constitutionally invalid. For example, the General Order concerning dealing with "Foreign Nationals" contains no specific limitations on the use of deadly force. *Id*. at pp. 123-24. Under Plaintiff's logic, that General Order unconstitutionally does not prohibit a City employee from firing a handgun at a "foreign national" without the requisite cause.

constructive or actual knowledge of constitutional deficiencies, these rules do not bind the City to *Monell* liability.

Therefore, even assuming all of Plaintiff's claims of constitutional deprivations on June 1, 2020 are true, all of Plaintiff's new allegations fail to show the City's actual policymaker – the City Council – was responsible for any of them.

**B.   The New Complaint Does Not Remedy the Prior Complaint's Many Failings**

Plaintiff's new Complaint does not plead sufficient facts to state a *Monell* claim – specifically, that none of the facts alleged show: (1) City policymakers either promulgated or ignored unconstitutional policies of City employees violating citizens' federal rights; (2) any pattern or practice is alleged that plausibly can show City policymakers were deliberately indifferent to City employees violating citizens' federal rights; and (3) that any City policy, action, or inaction alleged in the Complaint could plausibly have been the "moving force" behind Plaintiff's alleged injuries. All of Plaintiff's "new" causes of action sound in the same allegedly unconstitutional acts claimed in Plaintiff's prior Complaint, except as discussed below. In addition to the failure to plead facts from which this Court could infer that Plaintiff had identified the correct policymaker, this Court found that Plaintiff's prior Complaint lacked facts for several key elements of his *Monell* claim. Plaintiff's new Complaint fixed none of these flaws, and the City's prior Motion to Dismiss – as well as this Court's dismissal Order – have already addressed these issues.[8] Nonetheless, for the sake of clarity and judicial economy, the City requests the Court incorporate

---

[8] *See Davis v. Baylor Regional Med. Ctr. at Grapevine*, No. 3:11-cv-1350, 2013 WL 866173, at *1 (N.D. Tex. Mar. 8, 2013) ("If some of the defects raised in the original motion remain in the new pleading, the court may simply consider the motion as being addressed to the amended pleading."); *see also New World Int'l, Inc. v. Ford Glob. Techs., LLC*, No. 3:16-CV-1112-M, 2017 WL 1078525, at *5 (N.D. Tex. Mar. 22, 2017), *aff'd,* 714 F. App'x 1021 (Fed. Cir. 2018)("However, a motion to dismiss that attacks the original complaint for deficiencies that persist in the amended complaint should not necessarily always be denied as moot. Rather, the court has the discretion to apply the original motion to dismiss to the amended complaint.")

all the City's prior arguments from its previous Motion to Dismiss and this Court's holdings to all of the new Complaint's repetitions of the prior Complaint's allegations.[9]

### a. The Complaint Does Not Allege that the City's Training or Oversight was Obviously Deficient, Nor Any Pattern That May Show City Policy.

Plaintiff's prior Complaint's claims that directly or indirectly allege failures to train, this Court found Plaintiff failed to plead "sufficient allegations to state a plausible claim that the City's training policies or procedures were inadequate, let alone facts that could state a claim that the need for more or different training was obvious." (Doc. no. 23, p.21.) Seeking to plead around this, Plaintiff now pleads that two months after the incident giving rise to this case, the DPD Chief issued the "After Action Report," (the "AAR,") which supposedly found deficiencies in the City's response to the 2020 protests. Compl. ¶¶ 84-89. Plaintiff's reliance on the DPD Chief's AAR is unavailing.

First, under plain Fifth Circuit law, no pattern or practice can be gleaned from any alleged bad acts committed *on the day* of an incident, no matter how well alleged. *See Pena*, 879 F.3d at 622 n.14 ("[A] plausible claim requires more than a recitation of the incident in which the plaintiff was personally involved."); *Valle v. City of Houston*, 613 F.3d 536, 548 (5th Cir. 2010) ("[E]ven assuming that these later shootings involved excessive force, they are not sufficient to show that the City was on notice of similar constitutional violations *before* Esparza was killed." (emphasis in original)); *see also Connick v. Thompson*, 563 U.S. 51, 62 n.7 (2011) ("[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide 'notice to the cit[y] and the opportunity to conform to constitutional dictates . . .'" (alteration in original) (quoting *City*

---

[9] *New World Int'l, Inc.*, 2017 WL 1078525, at *5 ("The Court concludes, therefore, that in light of the Amended Complaint and the Second Motion to Dismiss, the First Motion to Dismiss should be DENIED as moot, except to the extent that positions taken in the First Motion to Dismiss, including the request for sanctions, are incorporated by reference into the Second Motion to Dismiss.")

*of Canton, Ohio v. Harris*, 489 U.S. 378, 395 (1989)). Even assuming the City's policymaker uncovered failures to train and unconstitutional policies *after* the 2020 protests, that does not remotely indicate City policymaker constructive knowledge of the alleged bad practices *before* the protests. Therefore, because Plaintiff has not alleged the "general required" pattern or widespread practice of any denials of constitutional rights, their section 1983 claims fail for lack of deliberate indifference.

Second, the facts as pled only show generalized assessments of problems dealing with crowds the size of the unprecedented 2020 George Floyd protests. *See, e.g. id.*, ⁋ 88 ("The AAR concedes that DPD officers and supervisors clearly had not received sufficient prior training, acknowledging that 'it was clear to Field Commanders that regular and reoccurring training on Mobile Field Force Tactics is needed' as 'officers and supervisors . . . appeared unsure as to the best tactics during officer/protestor encounters.'") Plaintiff also cites "after-the-fact changes, subsequent adoption of policies" and other ensuing statements or training (*id.* ⁋ 92) does not speak to the central issue of failure to train: whether "in light of the duties assigned to specific officers or employees the need for more or different training is *so obvious*, and the inadequacy *so likely* to result in the violation of constitutional rights," a municipality might reasonably be found to be deliberately indifferent. *City of Canton,* 489 U.S. at 390 (emphasis added.)

Lastly, none of the alleged facts about the AAR display failures to train on any of Plaintiff's Fourth or First Amendment issues. Here, in the Fourth Amendment excessive force context, for the City to be liable to be liable for failure to supervise, "it at least must have been obvious that 'the highly predictable consequence' of not supervising its officers was that they 'would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk.'" *Peterson*, 588 F.3d at 850 (quoting *Brown,* 219 F.3d at 461)). The Complaint – and common knowledge – speak

to no prior mass protests in Dallas, much less a pattern of City employee misbehavior in them. Further, the AAR speaks to no failures to train on First Amendment press freedom issues, the second area of Plaintiff's grievances The new Complaint, therefore, does not plead facts that any need for additional crowd control training was "obvious" to the City's policymakers.

### b. No Facts in The New Complaint Plausibly Plead Deliberate Indifference.

A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997). "A pattern is tantamount to official policy when it is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* (quotation marks and citation removed.) Where a plaintiff relies on prior incidents to prove a pattern, "they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the [municipality] that the objectionable conduct is the expected, accepted practice of [municipality] employees." *Id.*

This Court found Plaintiff's prior Complaint did not plead deliberate indifference by the City's policymaker because it only cited one prior protest event and incidents on or around Plaintiff's alleged injury. (Doc. no. 23, pp. 12-13.) The handful "of isolated instances [alleged] are insufficient to satisfy the elements of a 'persistent, widespread practice of City officials or employees which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.'" *Id.,* p. 13. (citation omitted.) The new Complaint alleges *no new instances* of purported violations of similar City employee misconduct prior to the incident at issue. Therefore, the new Complaint does not allege an unconstitutional pattern either to show a City policy nor deliberate indifference towards training and oversight.

Further, the new Complaint squarely assigns all alleged deliberate indifference to non-policymaker Chief Hall. *See, e.g.* Compl. ⁋ 77 ("Therefore, in 2018, DPD Chief Hall was aware that there was a substantial likelihood that DPD officer would fire KIPs directly into crowds . . . [yet] DPD Chief Hall failed to implement any policies to prevent this substantial likelihood from occurring again.") Even assuming Chief Hall was aware of policy and training failings within the DPD, as a decisionmaker, she could not bind the City to *Monell* supervisory liability.

### c. The New Complaint Fails to Plead Any Plausible "Moving Force" Causation.

Plaintiff asserts only conclusory allegations of causation and fails to connect the lack of training or procedures to the complained-of injury. Plaintiff must allege facts which show "moving force" causation to establish his § 1983 claims. *Valle*, 613 F.3d at 542. To show "moving force causation," Plaintiff must demonstrate a "direct causal link" between the municipality's policy and the deprivation of Plaintiff's federal rights. *Id.* at 542, 546 (citing *Brown*, 520 U.S. at 404). "[T]he connection must be more than a mere 'but for' coupling between cause and effect. The deficiency in training, hiring, or supervision must be the actual cause of the constitutional violation." *Valle*, 613 F.3d at 546 (quotation omitted).

This Court previously found, as to Plaintiff's prior Complaint's policy allegations, there was no "moving force" causation alleged where there were insufficient prior instances of City employee malfeasance. (Doc. no. 23, p. 19.) Whether for showing causation for failures to train/supervise, or for his policy claims, because Plaintiff alleges no new patterns of prior City bad acts, his claims again fail for lack of facts from which this Court can infer the requisite causation.

Further, for reasons cited above, none of Plaintiff's new claims about General Orders' supposed unconstitutionality sufficiently plead "moving force" causation. First, these General Orders were promulgated by then-DPD Chief Hall. Compl. ⁋ 161. She was not the City's

policymaker, so therefore, no actual City actions caused Plaintiff's alleged injuries. Second, Plaintiff's conclusory pleading that these General Orders did not specifically contain restrictions on use of force – as opposed to *specifically unrestricting* use of force – cannot overcome his lack of any pattern of prior City employee bad acts.

With no accusations that City employees could have been aware of more than one instance of an arguable misuse of force two years prior to the incident at issue, Plaintiff's new Complaint does not plausibly allege City policymakers "created a culture that emboldened the officers in this case to engage in the conduct that resulted in" any alleged deprivations or injuries asserted here. *Sanchez*, 283 F.Supp.3d at 544.

Therefore, Plaintiff's new Complaint fails to allege facts from which this Court can infer that any City policy or indifference was the "moving force" of the wrongs alleged.

## IV.    CONCLUSION

Plaintiff's new Complaint offers no new substantive allegations that the City *itself* caused his alleged injuries. As before, his new Complaint amounts to little more than *respondeat superior* liability. Therefore, the new Complaint – and Plaintiff's claims in total – must be dismissed with prejudice.

### CERTIFICATE OF SERVICE

I certify that on November 21, 2022, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the CM/ECF electronic case filing system of the court. The electronic case filing system will send a "Notice of Electronic Filing" notification to all case participants registered for electronic notice, including all *pro se* parties and/or attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*s/ J. Cheves Ligon*
J. Cheves Ligon

22