IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STEVEN M. MONACELLI, <br><br> *Plaintiff*, <br><br> v. <br><br> CITY OF DALLAS and OFFICERS JOHN DOE 1-4, individually and in his official capacity as a Dallas Police Department Police Officer, <br><br> *Defendants*. | Civil Action No. 3:21-cv-2649 |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS
STATEMENT OF GOOD CAUSE**

Plaintiff files this reply to briefly address three points raised in Defendant City of Dallas's Response, Dkt. 29, to Plaintiff's Statement of Good Cause, Dkt. 24.

1. *Declining to seek records through the Texas Public Information Act before filing suit is not evidence of a lack of diligence, particularly when doing so would have taken months and would likely have been futile.*

Defendant City of Dallas faults Plaintiff for declining to file a public records request prior to filing suit. The City suggests that by failing to "utilize Texas's liberal freedom-of-information laws" at that time, Plaintiff failed to properly and diligently investigate his claims, and that this failure counts as intentional conduct which militates in favor of dismissal with prejudice. Dkt. 29 at 9-11, 13. As Defendant would have it, Plaintiff should have invested additional months, potentially years, navigating the public records process with the hope—but far from the guarantee—that the records he sought would be made available to him by the City.

1

Of course, the likelihood of those records being released through a pre-suit public records request was exceedingly low, something the City of Dallas is surely aware of. As the Dallas Morning News explained in an article published shortly after Plaintiff filed suit documenting the City's tilt away from transparency in law enforcement records, delays in the public records process are typical—even expected—when requestors seek police records from the City of Dallas: "Dallas police can take months to fulfill basic records request, if they are ever filled. The department can direct records requests to Attorney General Ken Paxton's office to delay or prevent the release of information. For instance, a request for incident reports filed by *The News* in July 2020 remains open [as of November 8, 2021]," more than 16 months later.[1]

The City of Dallas has been just as scrupulous in attempting to withhold police records related to the George Floyd protests using the litigation exception specifically. Indeed, the City began relying on the litigation exception to block disclosure of these records to *any* requestor—not just parties to suit—as early as October 2020. *See, e.g.*, Tex. Atty. Gen. Op. OR2020-26079, 2020 WL 6286691 (Oct. 16, 2020). There, the City pointed to two lawsuits filed in this Court—*Williams v. City of Dallas*, No. 3:20-cv-01526 and *Dobbins v. City of Dallas*, No. 3:20-cv-1727, both of which relate to alleged police misconduct at the George Floyd protests in Dallas—to argue that it was authorized to withhold protest-related records from public disclosure under the litigation exception. Though the Attorney General did not side with the City because the request at issue was received before the lawsuit was filed, the City's actions nonetheless ensured that release of the information sought was delayed by months. The Attorney General opinion also indicates that timing was the key factor there—had the request been received after the lawsuits were filed, the

---

[1] Kelli Smith, "Dallas deletes information about crime from public view, plans more redactions and delays," DALLAS MORNING NEWS (Nov. 8, 2021), https://www.dallasnews.com/news/crime/2021/11/08/dallas-deletes-information-about-crime-from-public-view-plans-more-redactions-and-delays/.

litigation exception would have applied. Later Attorney General opinions show the City was indeed successful in claiming the litigation exception to block disclosure of law enforcement records, citing to *Williams* and *Dobbins* as justification. *See, e.g.*, Tex. Atty. Gen. Op. OR2020-30759, 2020 WL 7631889 (Dec. 9, 2020); Tex. Atty. Gen. Op. OR2020-31173, 2020 WL 7664311 (Dec. 14, 2020); Tex. Atty. Gen. Op. OR2021-03014, 2021 WL 625769 (Feb. 4, 2021); Tex. Atty. Gen. Op. OR2021-03972, 2021 WL 1375197 (Feb. 22, 2021); Tex. Atty. Gen. Op. OR2021-05668, 2021 WL 1348241 (Mar. 9, 2021).

In other words, from the moment the first lawsuit arising from the George Floyd protests was filed, the City was authorized to rely upon—and did rely upon, almost immediately—the litigation exception to block release of related records to non-litigant requestors who sought them through the public records process—a process Defendant now ironically faults Plaintiff for not utilizing. With this much-needed context in mind, it was reasonable for Plaintiff to forego submitting a public records request to the City during his pre-suit investigation when, from start to finish, the process almost certainly would have added months to his investigation timeline, and likely would have ended with Plaintiff being barred from obtaining the information he needed to identify the John Doe officers.

Rather than take that risk, Plaintiff opted to file suit while there was still ample time left in the limitations period, with the intent of utilizing the discovery process to name the John Doe officers. But that did not end Plaintiff's obligation to continue seeking out their identities using informal mechanisms while waiting for discovery to become available in the ordinary course of litigation. Plaintiff attempted to do that, and found no recourse in those attempts. *Cf. Crisp v. Dutton*, 2015 WL 7076483, No. A-15-CV-0431, at *7 (W.D. Tex. Nov. 12, 2015) (noting plaintiff's informal, but unsuccessful attempts at ascertaining "basic information" by approaching

the officers' employer "in a good faith effort to exchange basic information up front" and the County "nevertheless refused to release incident reports, or even summary information such as officer names, relating to this incident."); *see* Dkt. 24 at 5-6; *see also id.* at 4 n.4 (noting that Plaintiff had a constitutional right of access to similar "basic information" which supplanted any basis for withholding, including the litigation exception).

By alleging that Plaintiff lacked diligence in foregoing the public records process—a process that has become anything but "liberal"—Defendant seems to want to impose a soft requirement on all plaintiffs to first pursue the information they need through a public records request before filing suit, lest they be accused of lacking diligence later. This, of course, would be a boon to the City, allowing it to delay, stall, and resist in the hopes of running out the clock on a potential litigant's claims. Plaintiff opted to avoid that process knowing well the obstacles to disclosure the public records process entailed. Defendant's argument that he showed a lack of diligence in making that choice should not be countenanced.

2. *The John Doe officers will not be prejudiced; but even if they were, dismissal with prejudice is not warranted when Plaintiff has not been contumacious.*

Defendant's chief concern about the potential for prejudice to the John Doe officers is that when too much time has elapsed since the events at issue, "[e]vidence deteriorates or disappears, memories fade, and witnesses die or move away." Dkt. 29 at 12 (quoting *Sealed Appellant v. Sealed Appellee*, 452 F.3d 415, 418 (5th Cir. 2006) (quoting *Veazey v. Young's Yacht Sale and Serv., Inc.*, 644 F.2d 475, 477 (5th Cir. Unit A May 1981))). Valid as those concerns may be, they are lessened here because they pertain to an event that the City has already "participated in extensive discovery" regarding. Dkt. 16 at 6-7. There is negligible risk therefore that recordings

4

and other documentary evidence in the City's custody, which will likely serve as the best primary source material to support Plaintiff's claims, will become unavailable.

But even if prejudice to the John Doe officers is apparent, their dismissal with prejudice is not appropriate when Plaintiff has not been contumacious in attempting to identify them. The City's reliance on *Bourgeious v. Belachew* speaks precisely to that point. No. 3:20-cv-1705, 2021 WL 197425 (N.D. Tex. Jan. 19, 2021). There, the Court did indeed find the potential for prejudice to an individual defendant (Belachew) whose identity was known to the Plaintiff but who had not been served five months past the expiration of the limitations period, after the Court ordered plaintiff's counsel to demonstrate good cause for failing to effect service. *Id.* at *1. After plaintiff's counsel failed to comply with the order, and the Court dismissed the action as a result, plaintiff's counsel filed a Rule 60(b)(1) motion to reinstate the case, arguing that his negligence in failing to update his contact information with the Court resulted in him not being informed of the three separate orders issued by the Court requiring Plaintiff to take certain actions. *Id.*

The Court *sua sponte* considered as a basis for relief that the Court's original dismissal order should have been treated as a dismissal with prejudice, and consequently held dismissal with prejudice to be unwarranted. *Id.* at *4. The Court found that Plaintiff's conduct in "fail[ing] to comply with 'a few court orders' over the course of 'a few months'" did not constitute the "stubborn resistance to authority" that is required to find a party contumacious. *Id.* at *5 (quoting *McNeal v. Papasan*, 842 F.2d 787, 791 (5th Cir. 1988)). At most, the Court held, the delay there was caused by negligence. *Id.* Absent a clear record of contumaciousness, and only one aggravating factor (prejudice against defendant Belachew), the Court concluded that dismissal with prejudice was unwarranted and granted the Plaintiff's motion to reinstate the case.

Here, as in *Bourgeious*, the record does not support a finding that Plaintiff has acted with the kind of "egregious" or "outrageous delay[]" necessary to support a contumaciousness finding. *See id.* (quoting *Rogers v. Kroger Co.*, 669 F.2d 317, 321 (5th Cir. 1982). Plaintiff has encountered roadblocks in attempting to unmask the John Doe officers, but his actions were not taken to flout the Court's authority, nor has Defendant offered any argument suggesting that Plaintiff's conduct rises to that level. Thus, even if the Court is inclined to find prejudice to the John Doe officers, that factor alone, without a contumaciousness finding, does not support dismissal with prejudice.

3. *The Relation Back and Equitable Tolling issues raised by Defendant are not ripe.*

Plaintiff has previously stated his belief that he has a valid, indeed compelling, basis to seek equitable tolling of the limitations period if he is able to ultimately identify the John Doe officers. *See* Dkt. 17 at 4, Dkt. 19 at 9-10, 14. For those same reasons, he disagrees with Defendant's argument, Dkt. 29 at 14-17, that permitting him additional time to identify the John Doe officers would be futile. Because that issue and the relation-back concerns also raised by Defendant are contingent upon Plaintiff identifying the John Doe officers, effecting service upon them, and seeking the Court's leave to amend his complaint, the issues Defendant raises are not yet ripe for the Court's review, and should not factor into the Court's determination on whether Plaintiff has shown good cause to justify his delay in identifying and serving the John Does. Plaintiff nonetheless looks forward to addressing those concerns at the appropriate time if he is successful in naming the John Doe officers.

Dated: November 28, 2022                    Respectfully submitted,

*/s/ David W. Henderson*
David W. Henderson
Texas State Bar No. 24032292
dhenderson@equalrights.law
**ELLWANGER LAW LLLP**
400 S. Zang Blvd. Ste. 600
Dallas, TX 75208
Telephone: (469) 998-6775
Facsimile:  (469) 998-6775

*/s/ Peter B. Steffensen*
Peter B. Steffensen
Texas State Bar No. 24106464
psteffensen@mail.smu.edu
SMU DEDMAN SCHOOL OF LAW
FIRST AMENDMENT CLINIC
P.O. Box 750116
Dallas, TX 75275
Telephone: (214) 768-4077
Facsimile:  (214) 768-1611

***Counsel for Plaintiff***

## CERTIFICATE OF SERVICE

I certify that on November 28, 2022, a true and correct copy of this document properly was served on counsel of record via electronic filing in accordance with the USDC, Northern District of Texas Procedures for Electronic Filing.

/s/ *Peter B. Steffensen*
Peter B. Steffensen