IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEVEN M. MONACELLI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-CV-2649 |
| | § | |
| CITY OF DALLAS, and OFFICERS | § | |
| JOHN DOE 1-4. Individually and in | § | |
| his official capacity as a Dallas Police | § | |
| Department Police Officer, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT CITY OF DALLAS'S REPLY TO PLAINTIFF'S RESPONSE TO ITS MOTION TO DISMISS

CITY ATTORNEY OF THE CITY OF DALLAS

Christopher J. Caso
City Attorney

*/s/ J. Cheves Ligon*
J. Cheves Ligon
Senior Assistant City Attorney
Texas State Bar No. 24070147
John.Ligon@Dallas.gov


7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone:   214-670-1236
Facsimile:   214-670-0622
*Attorneys for Defendant City of Dallas*

**TABLE OF CONTENTS**

I. **SUMMARY OF REPLY** ...................................................................................................1

II. **ARGUMENTS AND AUTHORITIES IN REPLY** .......................................................1

    A. Former DPD Chief Reneé Hall was not a City "policymaker," and her actions cannot create municipal liability. Nothing in Plaintiff's Complaint or Response require this Court to deviate from settled law. ...................1

        i. The Complaint does not allege the City Council expressly delegated policymaking authority to the DPD Chief. ..................................2

        ii. The Complaint does not allege the City Council impliedly delegated policymaking authority to the DPD Chief. ..................................5

        iii. The Complaint does not allege the DPD's General Orders somehow confer policymaking authority away from the City Council to the DPD. ..............................................................................5

    B. Plaintiff's failure to train claims still fail. ................................................................7

    C. Plaintiff's failure to discipline claims fail. ...............................................................8

    D. Plaintiff's boilerplate assertions that certain written DPD General Orders were unconstitutional are insufficient to state a claim. ..............................10

    E. The Response shows the Complaint does not allege "moving force" causation. ................................................................................................................11

III. **CONCLUSION** ...............................................................................................................12

CERTIFICATE OF SERVICE .................................................................................................13

# TABLE OF AUTHORITIES

**CASES**

*Backe v. City of Galveston, Tex.*, 2 F. Supp. 3d 988 (S.D. Tex. 2014) ........................................... 6

*Harper v. City of Dallas, Texas*, No. 3:14-CV-2647-M, 2018 WL 11408879 (N.D. Tex. Nov. 20, 2018) ............................................................................................................................... 2, 4, 6

*Hobart v. Estrada*, 582 F. App'x 348, 356 (5th Cir. 2014) ............................................................. 6

*Mote v. Walthall*, No. 4:16-CV-00203, 2017 WL 2651705 (E.D. Tex. June 20, 2017) ................. 6

*Peña v. City of Rio Grande City*, 879 F.3d 613 (5th Cir. 2018) ..................................................... 7

*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) ........................................................ 7

*Robinson v. City of Garland, Texas*, No. 3:10-CV-2496-M, 2016 WL 7396048 (N.D. Tex. Aug. 17, 2016) ................................................................................................................................... 6

*Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863 (5th Cir. 2000) ............................................... 12

*Valle v. City of Houston*, 613 F.3d 536 (5th Cir. 2010) ............................................................... 11

*Vess v. City of Dallas*, 2022 WL 2277504 (N.D. Tex. June 23, 2022) ........................................... 9

*Villegas v. City of El Paso*, No. EP-15-CV-00386-FM, 2020 WL 981878 (W.D. Tex. Feb. 28, 2020) ............................................................................................................................................ 6

*Webb v. Town of Saint Joseph*, 925 F.3d 209 (5th Cir. 2019) ....................................................... 5

*Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161 (5th Cir. 2010) ............................................ 6

**STATUTES**

Tex. Code Crim. Proc. Ann. art. 2.17 ............................................................................................. 4

TO THE HONORABLE COURT:

The Defendant City of Dallas (the "City"), pursuant to Federal Rules of Civil Procedure rule 12(b)(6) and LR 7.1, files its Reply Brief in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint ("Complaint").

## I.   SUMMARY OF REPLY

Plaintiff's latest Complaint and Response to the City's Motion to Dismiss (the "Response" (ECF No. 32) ignore this Court's prior exegesis of U.S. Supreme Court and Fifth Circuit law.

The Chief of the Dallas Police Department ("DPD") is not, and has never been, the City's policymaker. He or she is a City employee who, while granted certain administrative powers over the DPD, does not set DPD's end goals – only the means by which the DPD can accomplish policy set forth by the City Council. Plaintiff attempts, but fails, to assign her policymaker status to bypass the City's excellent record of service, and therefore fails to allege any sort of official policy.

Plaintiff abandons alleging any sort of "pattern" of City bad acts to allege deliberate indifference, despite the fact that a pattern is genuinely required. As this Court has already found, his claims do not fit into the narrow "single incident" exception.

Lastly, on the critical issue of *Monell* causation, the Response tellingly devotes barely a page. This is because nothing the City is alleged to have done even plausibly constituted the "moving force" behind Plaintiff's injuries.

## II.   ARGUMENTS AND AUTHORITIES IN REPLY

**A. Former DPD Chief Reneé Hall was not a City "policymaker," and her actions cannot create municipal liability. Nothing in Plaintiff's Complaint or Response require this Court to deviate from settled law.**

"The Fifth Circuit and district courts within the Northern District of Texas have repeatedly found that state and local law establish that the City Council is the final and exclusive policymaker

1

for the City of Dallas." *Harper v. City of Dallas, Texas*, No. 3:14-CV-2647-M, 2018 WL 11408879, at *3 (N.D. Tex. Nov. 20, 2018). This is because the City Charter's "language indicates that the City Council did not delegate final policymaking authority of the DPD to the Chief of Police because he is at all times subject to the rules and supervision of the City Manager, who, in turn, is subject to the City Council's supervision." *Id*. This Court's Order explained that "*as a matter of law* [ ] former Chief Hall is not a final policymaker for the City with respect to the official policies or customs alleged in Plaintiff's § 1983 claims." ECF No. 23, p. 18 (emphasis added). Yet again, Plaintiff attempts to argue otherwise despite settled Fifth Circuit precedent that the City Council is the City's policymaker.

> As this Court previously noted,
>
> If the governing body chooses to delegate policymaking authority to a city official, it does so in either of two ways. It may delegate policymaking power by an express statement, job description, or other formal action; or it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role. In essence, the governing body must expressly or impliedly acknowledge that the agent acts in lieu of the governing body to set goals and to structure and design the area of the delegated responsibility, subject only to the power of the governing body to control finances and to discharge or curtail the authority of the agent.

*Id.* pp. 16-17.

The Response claims the Complaint sufficiently alleges both express and implied delegation. Resp. pp. 7-14. The City addresses each in turn.

### i. The Complaint does not allege the City Council <u>expressly delegated</u> policymaking authority to the DPD Chief.

Plaintiff claims that certain cherrypicked phrases from the City's Code somehow conferred policymaking authority to the DPD Chief under the noses of the bench and bar of this Court and the Fifth Circuit. This approach fails.

The Response chiefly focuses on one phrase of the Complaint's claims that the City Code grants the DPD Chief "the same powers as the sheriff of a county under the laws of the state."

Resp. p 9 (citing Compl. ⁋ 19)). For this proposition, the Complaint and Response cite "Dallas City Code, CH. 37, Art. II § 37-4." *Id*. First, and most glaringly given Plaintiff's attempted "textualist" approach, there is no such thing as "Article II § 37-4."[1] Article *I*, § 37-4, however, plainly does not delegate policymaking authority or mention "powers of a sheriff" when it states as follows:

> The chief of police shall assign to each man his round of duty and may order any of them to render service in any ward wherever and whenever, in his opinion, the occasion shall require it. He shall report in writing to the city manager the time actually served by each policeman, the time absent and such other information as he may deem proper or may from time to time be required by the city manager. He shall also see that the policemen are equipped with the proper arms and equipment which any emergency shall require. He shall see that they perform their duties and he shall report each failure promptly to the city manager. He shall, as far as practicable, cause all orders of the city manager to be faithfully executed.

Dallas City Code, art. I, § 37-4.

Article II specifically concerns the qualifications and powers of the DPD Chief, to which the City presumes Plaintiff is referring. These sections mention "sheriff" powers in two contexts:

**SEC. 37-23.   POWERS AND DUTIES GENERALLY.**

> The chief of police shall be the chief police officer of the city under the city manager. He shall, either in person or by deputy, attend all meetings of the city council, and wait upon the municipal court and promptly and faithfully execute all writs and processes issued out of such court. *He shall have like power with the sheriff of the county to execute search warrants and other writs*. He shall quell riots, disorders, disturbances of the peace and violations of every kind within the city and shall take into custody all persons thus offending, and may take good and sufficient bail for the appearance before the municipal court of any person charged with an offense which the municipal court has jurisdiction to try. It shall be his duty to arrest without warrant all violators of the laws and ordinances and all who obstruct or interfere with him in the discharge of his duties. *In the prevention and suppression of crime and the arrest of offenders, he shall have the same powers as the sheriff of a county under the laws of the state*. He shall perform such other duties and have such other powers as the city council may by resolution or ordinance require or confer or as may be prescribed by state law.

---

[1] https://codelibrary.amlegal.com/codes/dallas/latest/dallas_tx/0-0-0-116871 (last visited 12/19/22) (the City's Code is published through American Legal Publishing. https://dallascityhall.com/government/Pages/city-codes.aspx.)

3

**SEC. 37-24. MAY CLOSE BARROOMS, ETC.**

> To prevent a breach of the peace, the chief of police shall have authority to close any barroom, ballroom, drinking house, theater or any other place or building of public resort. *In the prevention and suppression of crime and the arrest of offenders, he shall have and execute like power, jurisdiction and authority as the sheriff of the county under the laws of the state*.

*Id*. art. II, sec. 37-23-24 (emphasis added).

Plaintiff's Complaint takes parts of sentences within the Code and extrapolates out that the City Council intended to obviate its own policymaking authority. Resp. pp. 8-10. Plaintiff cites no case law for this novel reading of the Dallas City Code that the Fifth Circuit and this Court have heretofore undiscovered. Under Texas law, a sheriff does not have *de facto* plenary power over policymaking. Instead, read in context of Texas law, the Code empowers the DPD Chief to stop criminal activity and jail defendants until trial:

> Each sheriff shall be a conservator of the peace in his county, and shall arrest all offenders against the laws of the State, in his view or hearing, and take them before the proper court for examination or trial. He shall quell and suppress all assaults and batteries, affrays, insurrections and unlawful assemblies. He shall apprehend and commit to jail all offenders, until an examination or trial can be had.

Tex. Code Crim. Proc. Ann. art. 2.17.

Nothing within the Code explicitly invokes the legal term of art regarding "sheriff" for purposes of policymaking that Plaintiff desires. This Court has explicitly found that the language of the City Charter mandates that the DPD Chief was not the City's policymaker "because he is at all times subject to the rules and supervision of the City Manager, who, in turn, is subject to the City Council's supervision" as dispositive of the matter. *Harper*, 2018 WL 11408879 at *3. Nothing in the Charter has changed. The City Code even still states that "chief of police shall be the chief police officer of the city *under the city manager*." Dallas City Code, art. II, § 37-23 (emphasis added). Any of the Code's delegations of power regarding law enforcement must be

4

read in the context of the Charter – and the Charter reserves policymaking for the City Council. The handful of uses of "sheriff" do not amount to *explicit* delegation.

In sum, Plaintiff's creative reading of parts of sentences in parts of Code sections cannot permit this Court to deviate from its long history of correctly identifying the City Council as the City's policymaker.

### ii. The Complaint does not allege the City Council impliedly delegated policymaking authority to the DPD Chief.

The Complaint and Response cites "reports" from news agencies' discussions of general police management issues wherein Plaintiff cobles together quotes "of numerous instances where DPD Chiefs were publicly recognized for their official policymaking authority . . ." Resp. pp. 9-10. The Response cites no case law for the proposition that news agencies' characterizations of municipal employees' supposed "official policymaking authority" is relevant to *Monell* analysis.

Further, the issues Plaintiff points to that the news agencies cited (officers growing beards, General Orders about duties to intervene in violent situations, the wearing of body cams) are not the stuff of policymaking but of day-to-day management. As the Fifth Circuit has noted, "[n]ot all delegations of authority are delegations of *policymaking* authority—[w]e have long recognized that the 'discretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (citation and quotation marks omitted) (emphasis in original).

Nothing in the Complaint or Response indicates the City Council delegated any sort of ultimate policymaking authority to the DPD Chief.

### iii. The Complaint does not allege the DPD's General Orders somehow confer policymaking authority away from the City Council to the DPD.

5

Plaintiff cites cases concerning other police forces' management and structure for the proposition that the DPD Chief's issuance of General Orders is sufficient to plausibly show the Chief is the City's policymaker. Resp. pp. 11-14. Plaintiff particularly seeks to analogize *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161 (5th Cir. 2010) with the City's practice. *Id.* But how Wichita Falls (*id.*), Stafford (*Hobart v. Estrada*, 582 F. App'x 348, 356 (5th Cir. 2014)), Garland (*Robinson v. City of Garland, Texas*, No. 3:10-CV-2496-M, 2016 WL 7396048, at *1 (N.D. Tex. Aug. 17, 2016)), El Paso (*Villegas v. City of El Paso*, No. EP-15-CV-00386-FM, 2020 WL 981878, at *1 (W.D. Tex. Feb. 28, 2020), *aff'd sub nom. Villegas v. Arbogast*, 836 F. App'x 334 (5th Cir. 2021)) Galveston (*Backe v. City of Galveston, Tex.*, 2 F. Supp. 3d 988, 991 (S.D. Tex. 2014)) or Corinth (*Mote v. Walthall*, No. 4:16-CV-00203, 2017 WL 2651705, at *1 (E.D. Tex. June 20, 2017), *aff'd,* 902 F.3d 500 (5th Cir. 2018)) operate is immaterial to whether the City Council delegated its authority to the DPD Chief.

In fact, this Court has already found the City's General Orders are simply part of the overall administrative power the DPD Chief has: "Former Chief Brown's testimony confirms that while he exercised significant control over the day-to-day operations within the DPD, including overseeing the issuance of the DPD's 'general orders,' his authority was subject to the supervision of the City Council." *Harper*, 2018 WL 11408879, at *4 (distinguishing *Zarnow* from the City's structure.) The Complaint and Response contain no new facts that show anything has changed within the DPD or the City Council's retention of policymaking authority.

Simply, despite repeated attempts from many plaintiffs, this Court routinely finds the City Council is the City's final policymaker. Because Plaintiff pleads his case in such a way that all alleged policies that he claims hurt him were the product of the DPD Chief, his claims fail the policy prong of *Monell* and should be dismissed.

6

### B. Plaintiff's failure to train claims still fail.

Plaintiff attempts to show the City (via the incorrect policymaker, Chief Hall) had inadequate training policies by relying on the "After Action Report" Chief Hall produced after the 2020 protests ("AAR"). As noted in the City's Motion, the Complaint's assertions about the report produced *after* the event alleged "facts as pled [that] only show generalized assessments of problems dealing with crowds the size of the unprecedented 2020 George Floyd protests." ECF no. 28, p. 18. Attempting to fill that gap, the Response cites numerous alleged training deficiencies from the AAR. Resp. p. 15 n.7. None of this was in the Complaint. As this Court noted in its prior Order, "Plaintiff's response brief contains new factual allegations that are not present in the Amended Complaint. Even if Plaintiff is attempting to assert additional factual allegations, a court 'does not base its decision on allegations raised for the first time in the motion to dismiss or the plaintiff's response.' The court, therefore, will not consider allegations raised for the first time in Plaintiff's response brief, but only those allegations contained in the Amended Complaint." ECF No. 23, p. 10 n.3 (citations omitted). These policy allegations still fail, even were the new citations included, because they do not specifically speak to policy failures that plausibly impacted any officer's alleged bad acts.

The Response's deliberate indifference arguments fare no better. "Deliberate indifference of this sort is a stringent test, and "a showing of simple or even heightened negligence will not suffice" to prove municipal culpability." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (citation omitted). Plaintiff again cites no sort of pattern of prior bad acts, which was fatal to his prior Complaint. See ECF No. 23 pp. 14-16 (dismissing prior Complaint for failure to identify pattern); *see also Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (upholding dismissal of pleadings where Plaintiff failed to identify pattern). Instead, Plaintiff notes that some protests had occurred in other cities in the days

7

before the events at issue here, then makes boilerplate allegations that Chief Hall knew that *and* that DPD officers were poorly trained, so therefore she was deliberately indifferent. Resp. pp. 15-16. Plaintiff cites no case law for the proposition that a non-policymaker's decision to deploy officers who had no pattern of mistreatment of citizens, to a once-in-a-generation event where the resultant alleged abuse had never previously occurred, could plausibly constitute deliberate indifference for municipal liability.

Further, for the same reasons as his prior Complaint, Plaintiff's live pleading cannot state a claim for failure to train under a "single incident" exception. The new Complaint adds no facts that could alter this Court's prior finding:

> Plaintiff, as part of his pleadings, suggests that the City can be liable under the single-incident exception, which recognizes that in a limited set of cases, a plaintiff, unable to show a pattern of constitutional violations, may establish deliberate indifference by "showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." The single incident exception, however, is a narrow one, and one that the Fifth Circuit has been reluctant to expand . . . "Accordingly, the exception will apply only whe[n] the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." Plaintiff's allegations fall woefully short of coming within the ambit of this narrow exception.

ECF No. 23, p. 21 n. 7 (citations omitted).

    **C.**    **Plaintiff's failure to discipline claims fail.**

Attempting to plead around this Court's prior dismissal, Plaintiff added in a handful of factual allegations and some "new" causes of action. Plaintiff now attempts to contend that the City "waived" any arguments in its Motion to Dismiss that the Complaint failed to state a claim of

8

failure to discipline. Resp. pp. 19-21.[2] Anticipating this, the City made clear it was challenging all of Plaintiff's theories of liability, and for the reasons thereof:

> Plaintiff's new Complaint rewords his prior causes of action, but the substance of them is the same: the City, he alleges, maintains unconstitutional policies and fails to train/supervise its employees. As this Court has noted, failures to train, supervise, and discipline are all analyzed the same. *Jean v. City of Dallas, Texas*, 2019 WL 7195308, at *5 n.6 (N.D. Tex. Aug. 12, 2019), report and recommendation adopted, 2019 WL 7187104 (N.D. Tex. Dec. 23, 2019)( "Although Plaintiffs separately assert claims for failure to train and failure to supervise or discipline, the elements required to prove a claim under either theory are the same.") Regardless, *all of Plaintiff's theories fail for lack of an unconstitutional policy, deliberate indifference, and causation*.

ECF. No. 28 p. 13 (emphasis added).

First, throughout the Motion, the City noted that the DPD Chief was not the actual policymaker. *Id.* pp. 9-14. Therefore, whatever Plaintiff's claims against the City he asserts originated from her bad acts fail. Second, the City walked through the new Complaint's many failings – which addressed the failure to assert any sort of pattern. *Id.* pp. 15-19. This included Plaintiff's pattern either to show a City policy nor deliberate indifference. *Id.* pp. 17; 19. As with all of Plaintiff's Complaint's variations on the same theme, "it is nearly impossible to impute lax disciplinary policy to the City without showing a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d 582 (citation omitted). Plaintiff's Response does not point to any allegations in the Complaint that any prior incidents occurred that were similar to his alleged injury; it is therefore impossible to fail to *not* punish something that *did not happen*. Indeed, the very case the Response cites shows some sort of pattern is required before *Monell* liability attaches. *See* Resp., p.19 (citing *Vess v. City of Dallas*, 2022 WL 2277504, at *11 (N.D. Tex. June 23, 2022) ("To support a failure-to-discipline policy, the Fifth Circuit has suggested that there be

---

[2] Plaintiff claims the City likewise did not challenge his "failure to adopt policies" cause of action. Resp. p. 16, n.8 For the same reasons as his "failure to discipline" red herring, this argument fails. The City challenged all of his claims.

9

an indication of 'systematic inattention' to complaints of misconduct and of 'a purely formalistic investigation' in response to incidents of misconduct.")) Yet the Response and Complaint do not cite a single example of prior issues with crowd control or attacks on journalists, or any other remotely relevant history of City employee bad acts.

Therefore, like his other claims, Plaintiff's "failure to discipline" claims fail for the same reasons.

**D. Plaintiff's boilerplate assertions that certain written DPD General Orders were unconstitutional are insufficient to state a claim.**

The Response does not explain why Plaintiff's "unconstitutional written policy" allegations can save his Complaint. Without providing the actual General Orders Plaintiff claims are unconstitutional, the Court and the City must simply assume Plaintiff's explanation of them is sufficient.

Plaintiff does not allege that the City provided "no training" on constitutional restrictions on uses of force or probable cause requirements. Plaintiff does not allege the City provided no General Orders on same. Plaintiff does not claim the "facially unconstitutional" General Orders rescinded any instruction or restrictions on uses of force or probable cause for arrest. Plaintiff instead claims that these General Orders did not specifically include prohibitions against force and unlawful arrest and, therefore, they are somehow not only "facially unconstitutional" but the "moving force" behind his injuries. Resp. pp. 21-22.

Plaintiff cites, and the City is aware of, no court's opinion that failure to include a specific constitutional restraint of force and/or arrests in a single, discrete regulation, rule, teaching aid, or

10

even police training coursework renders same "facially" unconstitutional. Such a requirement would leave to absurd results.[3]

Further, as Plaintiff stresses, it is not the City Council that creates General Orders, but the DPD Chief. Resp. p. 13. As discussed above and in the City's Motion, the DPD Chief is not the City's policymaker – so even assuming any General Order she promulgated contains problematic dictates, without the City Council's requisite deliberate indifference and "moving force" causation, the General Orders do not bind the City to liability.

Therefore, any of Plaintiff's claims premised on a "written policy" fail.

**E.    The Response shows the Complaint does not allege "moving force" causation.**

In addition to the brief "facially unconstitutional" arguments above, the Response devotes approximately a page to arguing his Complaint sufficiently pleads "moving force" causation. Resp. pp. 22-23.

This Court's prior Order found Plaintiff's Complaint lacked causation. ECF No. 23, pp. 18-19. The Response points to nothing substantively new in the Complaint that demonstrates a "direct causal link" between the City's policy and the deprivation of his federal rights. *See Valle v. City of Houston*, 613 F.3d 536, 542; 546 (5th Cir. 2010). The Complaint does not allege the City Council caused any of Plaintiff's injuries; whatever already-thin allegations that DPD Chief Hall's actions caused his injuries are immaterial.

Plaintiff's Complaint alleges, and the Response points the Court to, no alleged facts from which this Court can infer any City policy caused his claimed injuries.

---

[3] The complained-of statutes (the full contents of which, again, remain a mystery) likely do not contain instructions on the Second Amendment, which would – by Plaintiff's logic – act as a "free pass" to officers to illegally confiscate protestors' guns. These statutes presumably also contained no instructions about *Miranda* requirements, prohibitions against viewpoint discrimination, or proscriptions of cruel and unusual punishment, which would likewise render them facially unconstitutional by Plaintiff's reading. If every constitutional restriction on government action were required to be included in every police *regulation*, as opposed to every *training and oversight regime*, then virtually every regulation would be unconstitutional.

11

## III. CONCLUSION

This is Plaintiff's third attempt at pleading his Complaint. Given his refusal to assert facts from which this Court may infer the City's actual policymaker – the City Council – promulgated unconstitutional policies or were deliberately indifferent to a pattern of unconstitutional bad acts, it is not in the interests of justice to grant Plaintiff a fourth. "It is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000). The Response gives the Court no justifiable reason to believe Plaintiff can correct his Complaints' many insufficiencies.

Therefore, this case must be dismissed with prejudice.

**CERTIFICATE OF SERVICE**

      I certify that on December 27, 2022, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the CM/ECF electronic case filing system of the court. The electronic case filing system will send a "Notice of Electronic Filing" notification to all case participants registered for electronic notice, including all *pro se* parties and/or attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                                         s/ *J. Cheves Ligon*
                                                         Senior Assistant City Attorney